[No. 27431.   Department Two.   June 8, 1939.]

W. A. KANKELBORG, *Respondent,* v. MYRTLE VIRGINIA KANKELBORG, *Appellant.*[1]

*Merrill R. Wallace,* for appellant.

*James W. Bryan, Jr.,* for respondent.

GERAGHTY, J.—This appeal is from an interlocutory order granting the respondent a divorce from the appellant. The sole question involved is whether the respondent was domiciled in, and a resident of, the state at the time he instituted the action.

The respondent, a chief storekeeper in the Naval service, was born in the state of Utah, and he was domiciled in that state when he enlisted in the Navy

[1]Reported in 90 P. (2d) 1018.

in 1919. His residence, at the time of enlistment, was given in his service record as Murray, Utah. Since his enlistment, he has been stationed in China, the Hawaiian Islands, and the Canal Zone, as well as in San Diego and San Pedro, California, and the Bremerton Naval Station, in Washington.

In 1926, respondent was detailed for shore duty at Bremerton, where he remained for two years. While on this detail, he occupied a room for some months in Bremerton, outside the Naval Station, and, part of the time, stayed at the Young Men's Christian Association, in that city, when off duty and in town. While he did not keep a permanent room at the Y. M. C. A., he had his mail addressed there. He qualified himself as a voter in Bremerton, by registration, and voted for mayor at the city election in 1927.

At the expiration of this detail, he was ordered to service at other stations, and, in 1930, while stationed at San Pedro, married the appellant. He and appellant lived in rented quarters in Los Angeles for two or three months, but they generally, while there, lived with the appellant's relatives. She accompanied him to China and the Canal Zone.

Subsequent to 1928, respondent was stationed at Bremerton for a few months at a time, and he testified that, while on these details, he stopped at the Y. M. C. A. when on leave from the station. He stated that it was always his purpose to live at ·Bremerton on his retirement from active service in the Navy, and that he considered no other place as home. His testimony, in this respect, was corroborated by witness Munkittrick, a former chief machinist mate in the Navy, who had retired and taken up a residence in Bremerton. This witness testified that he had kept in pretty close touch with the respondent for many years, that they were good friends, and that respondent

had stated to him that Bremerton was the place where he was going to live. Respondent told him that he had voted at Bremerton, the only place he had ever voted, and that he considered his legal residence to be there.

"The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and the intent concur." 19 C. J. 418.

An officer or a private may acquire a domicile outside his military or naval station, the fact of change being established by independent evidence. *Ex parte White*, 228 Fed. 88.

"If a soldier stationed at any army post is permitted to live outside the post, it was held in *In re Cunningham*, 45 Misc. Rep. 206 (91 N. Y. Supp. 974), such person may acquire a domicile there. There seems to be no doubt that a soldier may acquire a new domicile apart from the army, and the fact that he cannot stay in the new home if called away to the army does not prevent his forming the *animus manendi* and acquiring the domicile there." *Harris v. Harris*, 205 Iowa 108, 215 N. W. 661.

That the respondent did acquire a domicile in the state of Washington in 1927, when he registered and voted in Bremerton, is conceded by the appellant. But she contends that this domicile was lost by his subsequent absence from the state on service assignments.

" 'A residence once established continues until a new one is acquired; a change of residence does not consist solely in going to and living in another place, but it must be with the intent of making that place the permanent residence. The temporary absence from the state of one domiciled there will not be held

a change of residence, unless to the fact of residence elsewhere be added the *animus manendi;* for a domicil, having once been acquired, continues until a new one is actually acquired *animo et facto.'* 9 R. C. L. 403." *Polk v. Polk,* 158 Wash. 242, 290 Pac. 861.

The record is devoid of any substantial evidence tending to prove that the respondent established a domicile anywhere subsequent to 1927, when, as appellant admits, he became. domiciled in the state of Washington. He was absent from this domicile on assignments in the course of duty as an enlisted man in the Navy. In a deposition made by the appellant and read at the trial, she testified:

"We always made our residence with my family in Los Angeles, except when we were in San Diego, Panama, and the Orient. We always considered Los Angeles our home, even when we were away from there, and Walt always spoke of Los Angeles as being his home as well as mine, except that he did say that when his services were up in the navy he wanted us to go back to his homestead in Utah and live."

This testimony is of a negative character. It does not show that respondent established a domicile anywhere subsequent to their marriage, and the reference to his returning to Utah, if taken at face value, amounted to no more than the expression of an intention to establish his domicile in that state at the close of his service. The expression of intention was not followed by any act tending to establish a domicile in fact, such as was the case when he changed his domicile from Utah to the state of Washington, by registering and voting.

The order appealed from is affirmed.

BLAKE, C. J., BEALS, SIMPSON, and JEFFERS, JJ., concur.