Argued December 5, 1944; affirmed January 16, 1945

# ZIMMERMAN *v.* ZIMMERMAN

(155 P. (2d) 293)

588

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

Nels Peterson, of Portland (Green & Landye, L. A. Recken, Harvey Benson, and Francis Krause, all of Portland, on the brief), for appellant.

Nadine B. Shaw, Deputy District Attorney, of Portland (James R. Bain, District Attorney, of Portland, on the brief), for respondent.

BRAND, J.

Suit by Richard H. Zimmerman against Betty Jane Zimmerman for divorce. From a decree dismissing the complaint on the ground that the plaintiff, a member of the armed forces of the United States, had not established the requisite residence in the state of Oregon, the plaintiff appeals.

On July 5, 1944, the plaintiff filed in the circuit court for Multnomah county, Oregon, a complaint in the usual form, seeking a divorce on the ground of desertion alleged to have occurred in June, 1943. After service upon her, the defendant was adjudged in default for want of appearance. However, at the trial the State of Oregon appeared and contested the suit on the ground that plaintiff, who was in the military service of the United States, had failed to establish

residence within the state of Oregon for the statutory period of one year. O. C. L. A. § 9-910.

From the testimony of the plaintiff, it appears that the parties were intermarried on December 27, 1941, at Washington Court House, Ohio. The plaintiff testified in general terms that he has been a continuous resident of the state of Oregon for more than one year immediately prior to the filing of the complaint, and now is such a resident. He lived in Oregon in the years 1938 and 1939, "and went home in '40." At the time he lived here, it was his intention to make Portland his home. He has never abandoned that intention. However, he returned to Washington Court House, Ohio, and was living there when drafted into the armed forces of the United States. He testified that he was not a resident of the state of Oregon when he entered military service. During parts of 1940 and 1941 he was living in Washington Court House, Ohio, where he married the defendant and remained until drafted into the service. Four months after he entered the service he was sent to Oregon and is stationed at Swan Island, a "permanent station," in Portland, Oregon.

He testified, in substance, that at all times since he was stationed in Oregon he has been able and willing to maintain a home for himself and wife and intended to do so. At the time of the alleged desertion in May, 1943, plaintiff was living in Portland and was in the military service. The desertion consists in the refusal of the defendant to come to and live with the plaintiff. The defendant has never left Ohio since the marriage.

The foregoing constitutes all of the evidence relative to the question in issue. The trial court, relying upon provisions of the Oregon constitution and a decision in 3rd Oregon, held that "no member of the

armed forces can, while a member * * * establish a domicile in the State of Oregon * * *.''

## BRAND, J.

We will consider, in order, the jurisdictional requirements for divorce, the established rules of the common law relative to domicil, the bearing of those rules upon suits for divorce and their particular application in the case of persons in military service. We will then consider the effect of Sections 4 and 5 of Article II of the Oregon Constitution and apply the ascertained rules to the facts of the pending case.

The statute provides:

"In a suit for the dissolution of the marriage contract, the plaintiff therein must be an inhabitant of the state at the commencement of the suit, and for one year prior thereto; which residence shall be sufficient to give the court jurisdiction * * *." O. C. L. A. § 9-910.

■■ As used in the foregoing statute, the words "resident" and "inhabitant" are used interchangeably. *Stewart v. Stewart,* 117 Or. 157, 242 P. 852. At common law, residence and domicil are not synonymous. Residence indicates merely a factual place of abode.

"* * * The difference between three conceptions, that of sojourn, residence, and domicil (not now including domicil by operation of law) is one purely of intention. To become a sojourner, no intention whatever is necessary, merely the fact of personal existence in the place. For residence there is an intention to live in the place for the time being. For the establishment of domicil the intention must be not merely to live in the place but to make a home there." 1 Beale on Conflict of Laws, § 10.3, p. 109.

■ Where neither party is domiciled within the state, no divorce can validly be granted. 1 Beale on Conflict of Laws, § 111.1, p. 476, citing many cases. And see §110.4, p. 472.

■ Notwithstanding the distinction between "residence" and "domicil" as the terms are used at common law, it is held that since the court lacks jurisdiction to grant a divorce unless there is a domicil within the state, the words "resident" or "inhabitant" when used in statutes such as O. C. L. A. § 9-910 should be construed to mean domicil. 1 Beale on Conflict of Laws, §10.8, p. 116; Restatement, Conflict of Laws (1934), §§ 9, e., and 110, b.; *Northwestern Mortgage and Security Co. v. Noel Const. Co.*, 71 N. D. 256, 300 N. W. 28; *West v. West*, 35 Hawaii 461; *St. John v. St. John*, 291 Ky. 363, 163 S. W. (2d) 820; *Ex parte White*, 228 Fed. 88; *Struble v. Struble*, Tex. Civ. App., 177 S. W. (2d) 279; *Dicks v. Dicks*, 177 Ga. 379, 170 S. E. 245. The case of *Miller v. Miller*, 67 Or. 359, 136 P. 15, recognizes the common law distinction between "residence" and "domicil," but by clear implication holds that jurisdiction to grant a divorce depends upon proof of domicil under O. C. L. A. § 9-910. The question, therefore, is whether the plaintiff was domiciled in Oregon for the required period.

■ We approve the following brief quotations from the Restatement, Conflict of Laws (1934), as constituting an authoritative exposition of the common law requirements of domicil:

§11. "Every person has at all times one domicil, and no person has more than one domicil at a time." §12. "Except as stated in §§17 and 26 to 40, relating to domicil in a vehicle and to domicil by operation of law, when a person has one home and only

one home, his domicil is the place where his home is."

§13. "A home is a dwelling place of a person, distinguished from other dwelling places of that person by the intimacy of the relation between the person and the place.

\* \* \*

"c. *Factors important in determining home.* In determining whether a dwelling-place is a person's home, consideration should be given to:

"1. Its physical characteristics;
2. The time he spends therein;
3. The things he does therein;
4. The persons and things therein;
5. His mental attitude toward the place;
6. His intention when absent to return to the place.
7. Elements of other dwelling-places of the person concerned."

§15. "(1) A domicil of choice is a domicil acquired, through the exercise of his own will, by a person who is legally capable of changing his domicil.

"(2) To acquire a domicil of choice, a person must establish a dwelling-place with the intention of making it his home.

"(3) The fact of physical presence at a dwelling-place and the intention to make it a home must concur; if they do so, even for a moment, the change of domicil takes place."

§16. "To acquire a domicil of choice in a place, a person must be physically present there; but a home in a particular building is not necessary for the acquisition of a domicil."

§18. "A person cannot change his domicil by removal to a new dwelling-place without an intention to make the new dwelling-place his home."
§19. "The intention required for the acquisition of a domicil of choice is an intention to make a home

in fact, and not an intention to acquire a domicil."
§20. "For the acquisition of a domicil of choice the intention to make a home must be an intention to make a home at the moment, not to make a home in the future."

Whether or not the plaintiff was in the military service of the United States, it was necessary for him in conformity with the foregoing rules to establish by pleading and evidence that his domicil was within the state of Oregon. In default of the establishment of domicil for the required period, the trial court would still have jurisdiction in the sense that it was authorized and empowered to hear and determine the issue of domicil, but unless the required domicil was established, it would be without jurisdiction to try the case upon the merits.

There is, however, a further limitation upon the power of a person to acquire a domicil of choice which applies in the case of persons in the armed forces of the United States. To acquire a domicil of choice, one must have legal capacity so to do. Conversely, a person can not acquire a domicil of choice by any act done under legal or physical compulsion. Restatement, Conflict of Laws (1934), § 21, p. 41.

"A soldier or sailor, if he is ordered to a station to which he must go and live in quarters assigned to him, cannot acquire a domicil there though he lives in the assigned quarters with his family; for he must obey orders and cannot choose to go elsewhere. If, however, he is allowed to live with his family where he pleases provided it is near enough to his post to enable him to perform his duty, he can acquire a domicil where he lives." Restatement, Conflict of Laws (1934), § 21, c., p. 41; 1 Beale on Conflict of Laws, § 21.2, p. 154.

The following cases support the rule as set forth in the Restatement: *West v. West,* supra (35 Hawaii 461); *Gipson v. Gipson,* 151 Fla. 587, 10 So. (2d) 82; *Hawkins v. Winstead, J.,* (Idaho) 138 P. (2d) 972; *St. John v. St. John,* supra (291 Ky. 363, 163 S. W. (2d) 820); *Trigg v. Trigg,* 226 Mo. A. 284, 41 S. W. (2d) 583; *Ex parte White,* supra (228 Fed. 88); *Kankelborg v. Kankelborg,* 199 Wash. 259, 90 P. (2d) 1018; *Struble v. Struble,* supra (Tex. Civ. App. 177 S. W. (2d) 279); *Dicks v. Dicks,* supra (177 Ga. 379, 170 S. E. 245); *Harris v. Harris,* 205 Iowa 108, 215 N. W. 661.

The rule as set forth in the Restatement is not confined to issues involving domicil in divorce cases. The rule also finds support when domicil becomes material in election contests, *In re Cunningham,* 91 N. Y. S. 974; in probate proceedings, *Ames v. Duryea,* New York, 6 Lans. 155; *Bailey v. Norman's Adm'r.,* 228 Ky. 790, 15 S. W. (2d) 1005; in cases involving the statute of limitations, *Mooar v. Harvey,* 128 Mass. 219; in cases involving change of venue, *Johnston v. Benton,* 73 Cal. A. 565, 239 P. 60; in cases involving removal to federal court, *Wise v. Bolster,* 31 Fed. Supp. 856; and in tax cases, *Remey v. Board of Equalization of Burlington,* 80 Iowa 470, 45 N. W. 899 (where the court not only supported, but perhaps unwarrantably extended the rule of the Restatement).

There is one group of cases which deserves special mention. Where one in military service dwells upon a reservation which is located on land ceded by the state to the United States, it has been held that he can not acquire domicil in that state for the reason that he is, in effect, living upon land which has ceased to be part of the state and has become federal territory. *Lowe v. Lowe,* 150 Md. 592, 133 A. 729, 46 A. L. R. 983; *Herken*

*v. Glynn,* 151 Kan. 855, 101 P. (2d) 946; *Sealey v. United States,* 7 Fed. Supp. 434 (cited by defendant); *Dicks v. Dicks,* supra. And see *Pendleton v. Pendleton,* 109 Kan. 600, 201 P. 62; *State ex rel. Cashman v. Board of Commissioners,* 153 Ind. 302, 54 N. E. 809; *St. John v. St. John,* supra. Contra, see cases cited in concurring opinion of Bond, C. J., in *Lowe v. Lowe,* supra.

There are but a few cases in which the rule of the Restatement has been apparently rejected by the courts. There is general language in the early case of *Tibbitts v. Townsend,* New York, 15 Abb. Pr. 221 (1862), tending to indicate that a soldier in active service cannot change his domicil, but in that case it was the contention of the soldier that he had not changed his domicil. Intent is always a vital issue and in this case the evidence was against the intent to change. The language employed is also inconsistent with the decisions of later New York cases. *Ames v. Duryea,* supra; *In re Cunningham,* supra.

In *Radford v. Radford,* 26 Ky. L. 652, 82 S. W. 391, the plaintiff, a naval officer, sued for divorce in Kentucky, his domicil of origin. The defendant challenged the jurisdiction of the court. The testimony of the plaintiff being in support of his domicil of origin, the court speaking of the plaintiff who was necessarily out of his native state by reason of the orders of his superiors, said:

"Such a one cannot be said, in any proper sense of the term, to have a residence anywhere other than the home he has left, since he has no choice as to where he goes, the time he can remain, or when he shall return." *Radford v. Radford,* supra (26 Ky. L. 652, 82 S. W. 391, 392).

The language quoted was, at most, dictum for the evidence disclosed that he had never claimed legal or

actual residence anywhere except at his domicil of origin.

There are two election cases from the state of Texas, *McBeth v. Streib,* Tex. Civ. App., 96 S. W. (2d) 992 and *Savage v. Umphries,* Tex. Civ. App., 118 S. W. 893, which are based upon a constitutional provision of the state of Texas which expressly provides:

"The following classes of persons shall not be allowed to vote in this State, to-wit:

\* \* \*

"Fifth: All soldiers, marines and seamen, employed in the service of the army or navy of the United States \* \* \*" (Art. VI, § 1, Texas Const.)

subject to certain exceptions. Those decisions have no application, even in Texas, upon the issue of the right of a soldier to change his domicil for other purposes. *Gallagher v. Gallagher,* Tex. Civ. App., 214 S. W. 516; *Struble v. Struble,* supra.

Our next inquiry is whether, in this state, the case may be decided upon the common law principles enunciated by the Restatement and supported by the authorities cited, or is controlled by constitutional provisions more narrowly limiting the right of a soldier to acquire a domicil of choice. The constitution provides:

"Residence. For the purpose of voting, no person shall be deemed to have gained or lost a residence, by reason of his presence, or absence while employed in the service of the United States, or of this state; nor while engaged in the navigation of the waters of this state, or of the United States, or of the high seas; nor while a student of any seminary of learning; nor while kept at any almshouse, or other asylum, at public expense; nor while confined in any public prison." Art. II, § 4, Or. Const.

The constitutions of the following states contain provisions which are substantially identical to Art. II, § 4, of the Oregon constitution: Arizona, Art. VII, § 3; California, Art. II, § 4; Colorado, Art. VII, § 4; Idaho, Art. VI, § 5; Illinois, Art. VII, § 4; Indiana, Art. II, § 4; Kansas, Art. V, § 3; Louisiana, Art. VIII, § 11; Michigan, Art. III, § 2; Minnesota, Art. VII, § 3; Missouri, Art. VIII, § 7; Montana, Art. IX, § 3; Nevada, Art. II, § 2; New Mexico, Art. VII, § 4; New York, Art. II, § 4; North Dakota, Art. V, § 125; Pennsylvania, Art. VIII, § 13; South Carolina, Art. II, § 7; South Dakota, Art. VII, § 6; Washington, Art. VI, § 4; Wisconsin, Art. III, § 4; and Wyoming, Art. VI, § 7.

The cases now to be noticed were decided in states included in the foregoing list and having constitutional provisions similar to Art. II, § 4, Or. Const., supra.

From early times, the California courts have held that its constitution does not prevent a soldier from acquiring a domicil of choice, even for the purpose of voting. In *People ex rel. Orman v. Riley,* 15 Cal. 48 (1860), an election contest, the court said:

"* * * The rule, as fixed by the Constitution is, that the fact of such sojourn or residence as soldiers, neither creates nor destroys citizenship— leaving the political *status* of the soldier where it was before." *People ex rel. Orman v. Riley,* 15 Cal. 48, 50.

In *Budd v. Holden,* 28 Cal. 123, 137 (1865), an election contest, the court, speaking of the relevant constitutional provision, said:

"* * * It merely declares that 'no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States,' which means

simply that in determining the fact of residence, presence or absence in the service of the United States shall not be taken into account, or in other words, neither presence nor absence in the service of the United States is a condition upon which the fact of residence can be affirmed or denied. * * * Nor did it preclude them from acquiring a residence in Mendocino, if disposed to do so. That it was their intention to acquire a domicil in Mendocino County sufficiently appears from the evidence. Such being the case, there is nothing in the constitutional provision in question (which is merely declaratory of the common law) which stands in the way of their doing so." *Budd v. Holden,* supra.

In *Percy v. Percy,* 188 Cal. 765, 207 P. 369 (1922), a divorce case, the court said:

"The fact that, at the time in question, he was on military duty in an army camp did not preclude him from establishing his residence there if he so desired."

No mention was made of the constitutional provision.

In *Johnston v. Benton,* supra, domicil was in issue on review of an order changing venue in an action for money. The court said:

"* * * It is well settled that the domicile of a person is in no way affected by his enlistment in the civil, military, or naval service of his country; and he does not thereby abandon or lose his domicile which he had when he entered the service, nor does he acquire one at the place where he serves. 9 R. C. L. 551; Stewart v. Kyser, 105 Cal. 459, 39 P. 19; People ex rel. Budd v. Holden, 28 Cal. 124; Estate of Gordon, 142 Cal. 125, 75 P. 672; Percy v. Percy, 188 Cal. 768, 207 P. 369. True, the fact of his being on military duty does not preclude him, if he so desires, from establishing residence where he is stationed (Percy v. Percy, supra); but the

uncontradicted evidence here is that such was not Benton's desire—that he never had any intention of doing so." *Johnson v. Benton,* supra (73 Cal. A. 565, 239 P. 60, 62).

The Idaho case of *Hawkins v. Winstead, J.,* supra, was a mandamus proceeding to compel a trial judge to take jurisdiction of a divorce suit. The question was whether the plaintiff, a soldier, had acquired residence in Idaho. The Idaho supreme court, citing the constitutional provision, supra, said:

"First: "It will have been noted that Section 5, supra, goes solely and only to the matter of gaining or losing residence for voting purposes, not to the matter of establishing a new residence for the purpose of prosecuting a suit for divorce." *Hawkins v. Winstead, J.,* supra (Idaho, 138 P. (2d) 972, 973).

The Missouri case of *Trigg v. Trigg,* supra (226 Mo. A. 284, 41 S. W. (2d) 583), a suit for divorce, holds that a soldier can effectively change his residence and that residence is largely a matter of "intention evidenced by some act or acts in conformity with such intention." The court does not mention the constitutional provision, apparently deeming it inapplicable.

*Kankelborg v. Kankelborg,* supra (199 Wash. 259, 90 P. (2d) 1018), a divorce suit, is to the same effect.

In *Wolcott v. Holcomb,* 97 Mich. 361, 56 N. W. 837, 23 L. R. A. 215 (1893), the question was whether inmates of a soldiers' home were entitled to vote in the district in which the home was located. It was held that under the Michigan constitution, a person who becomes an inmate of a soldiers' home gains no residence in the municipality where the home is located. The court by an interesting process of reasoning followed the result ob-

tained in a similar New York case, *Silvey v. Lindsay,*
107 N. Y. 55, 13 N. E. 444 (1887), while disagreeing
with the reasoning by which the result was reached.

In *Silvey v. Lindsay,* the court cited the constitu-
tional provision which is like that of Michigan and
Oregon, considered the question as to intent and then
held that an inmate of a soldiers' home had not ac-
quired a voting residence in the municipality where the
home was located. But the court also said:

"* * * But the question in each case is still,
as it was before the adoption of the constitution,
one of domicile or residence, to be decided upon all
the circumstances of the case. The provision (ar-
ticle 2, § 3) disqualifies no one; confers no right
upon any one. It simply eliminates from those cir-
cumstances the fact of presence in the institution
named or included within its terms. It settles the
law as to the effect of such presence, and as to which
there had before been a difference of opinion, and
declares that it does not constitute a test of a right
to vote, and is not to be so regarded. The person
offering to vote must find the requisite qualifica-
tions elsewhere." *Silvey v. Lindsay,* supra (107
N. Y. 55, 13 N. E. 444, 446).

The Michigan court in *Wollcott v. Holcomb,* supra,
observed that the New York and Michigan constitu-
tional provisions were the same, that the facts in the
two cases "were substantially identical" and quoted
with approval from the opinion of the New York court
as if it supported the conclusion that an inmate of a
soldiers' home could not acquire a voting domicil there.
However, it rejected the reasoning which appears in
the quoted portion of *Silvey v. Lindsay,* supra, on
which the decision of the New York case was based and
decided as a matter of law that the inmate of the
Michigan home could not acquire a domicil, his intent

being deemed "immaterial." But see *State ex rel. Cashman v. Board of Commissioners,* supra (153 Ind. 302, 54 N. E. 809). Then, having held that an inmate of a soldiers' home could not acquire voting residence while kept at an asylum at public expense, the court drew a distinction between the case of such an inmate and the case of a person "employed in the service of the United States." As in New York, the Michigan constitution provides:

"No elector shall be deemed to have gained or lost a residence *by reason of* his being employed in the service of the United States * * * nor *while* a student * * * nor *while* kept at any almshouse, or asylum at public expense * * *." (Italics ours) Art. VII, § 5, Mich. Const.

The court said:

"We are of the opinion that the terms, 'by reason of,' and 'while,' were understood by the framers of the constitution to have a different meaning. In the former case, the intention would very largely, if not entirely, govern the question of domicile, while in the latter it would not. It was clearly the intention of the former provision to give the citizen the right, if he chose, to carry his residence with him to the place where he was employed in the service of the United States or of the state, and in that latter case it seems equally clear that it was the intention not to give that right. What object, otherwise, could there have been in the use of these two terms? While the results of the adoption of one construction of the fundamental law of the state are not conclusive, nor of much force, where the construction is otherwise clear, still they are important considerations in determining the intent and purpose of the law. If the construction contended for by the relator be correct, it follows that all the inmates of county almshouses and of prisons and jails are electors, at their option, in the town-

ships and cities where those institutions are located. In the township of Haukin, in Wayne county, where the almshouse of that county is located, there were, in the year 1891, 1,851 male inmates,—more than twice the whole number of voters in the township. * * *'' *Wolcott v. Holcomb,* supra (97 Mich. 361, 56 N. W. 837, 839, 23 L. R. A. 215).

The New York cases are in harmony with the doctrine of *Silvey v. Lindsay,* supra (107 N. Y. 55, 13 N. E. 444), and questions of domicil of persons in military service are decided on common law principles. *Ames v. Duryea,* supra (New York, 6 Lans. 155) ; *In re Cunningham,* supra (91 N. Y. S. 974) ; and see *In re Hoff's Estate,* 35 N. Y. S. (2d) 60; and *Hurst v. Smith,* 39 N. Y. S. (2d) 282.

We agree with the view expressed in *Silvey v. Lindsay,* supra, and we agree that in providing that no elector shall be deemed to have gained a residence *by reason of* being employed in the service of the United States it was clearly the intention to give the citizen the right ''to carry his residence with him to the place where he was employed in the service of the United States'' as set forth in *Wolcott v. Holcomb,* supra, subject, of course, to the rules of the common law. It is apparent that upon either the New York or the Michigan theory, a soldier would not be barred by the constitutional provision from establishing a voting domicil under the conditions specified in the Restatement, Conflict of Laws, supra.

It is unnecessary for us to decide whether it was the intention to absolutely withhold that right from a person while a student or while kept at an asylum at public expense, or while confined in a public prison. There may be a distinction between the case of one *while* a student and that of one *while kept* or *while confined.*

We next pass to the consideration of Art. II, § 5, Oregon Constitution.

"No soldier, seaman, or marine in the army, or navy of the United States, or of their allies, shall be deemed to have acquired a residence in the state in consequence of having been stationed within the same; nor shall any such soldier, seaman, or marine have the right to vote." Art. II, § 5, Or. Const.

Our previous consideration of cases arising under constitutional provisions similar to Art. II, § 4, Or. Const., will be of material aid in construing § 5 of the same article. We have seen that Art. II, § 4, is construed to be declaratory of the common law and that notwithstanding the constitutional provision that no person shall be deemed to have gained a residence *by reason of* his presence in the service of the United States, it is still open to a soldier to establish domicil if the court finds "the requisite qualifications elsewhere." Sec. 5 of Art. II of the Oregon constitution does not use the words "by reason of," but instead it employs the phrase "in consequence of," having been stationed within the state. The two phrases as used are identical in meaning and it is therefore reasonable to construe the clause in Art. II, § 5, as being also declaratory of the common law. Under such a construction, the mere fact of having been stationed in Oregon would not permit us to deem that a soldier had acquired domiciliary rights, but if the soldier was permitted to and, in fact, did establish a home in Oregon, outside of a military reservation, with the requisite *animus manendi,* he might be "deemed" to be a resident. It is apparent that the word "deemed" as used in § 4 and § 5 of Art. II, should not be construed as creating a conclusive, but only a disputable, presumption. *Erickson v. Erickson,* 167 Or. 1, 115 P. (2d) 172.

The constitutions of the following states have provisions similar to Art. II, § 5, of the Oregon constitution: Arizona, Art. VII, § 6; Arkansas, Art. III, § 7; Delaware, Art. V, § 2; Illinois. Art. VII, § 5; Indiana, Art. II, § 3; Iowa, Art. II, § 4; Kentucky, Section 146; Maine, Art. II, § 1; Michigan, Art. III, § 3; Minnesota, Art. VII, § 4; Montana, Art. IX, § 6; Nebraska, Art. VI, § 4; New Jersey, Art. II, § 1; North Dakota, Art. V, § 126; Ohio, Art. V, § 5; Rhode Island, Art. II, § 4; South Dakota, Art. VII, § 7; Wisconsin, Art. III, § 5; and Wyoming, Art. VI, § 8.

All of the provisions in the last above named states expressly refer to persons in military service. In substantially every instance the provision is incorporated in an article entitled, "Suffrage and Elections," or the like, but the wording in each instance purports to impose limitations upon the right of persons in military service to acquire domicil of choice for any purpose. These provisions differ, therefore, from the previously noted provisions, most of which commence with the words "for the purpose of voting  *  *  *." We shall assume that the title headings are no part of the original constitutions and that the provisions are intended to apply to residence or domicil for all purposes—a matter which is not wholly free from doubt. Nevertheless, the courts which have passed upon questions of domicil under constitutional provisions like that of Art. II, § 5, Or. Const., have indicated that the common law rule prevails as stated in the Restatement.

Among the cases which have arisen under constitutional provisions of this sort, are the following:

In the case of *Harris v. Harris*, supra (205 Iowa 108, 215 N. W. 661), the plaintiff husband who had been

in military service brought suit for divorce in Iowa. Plaintiff had been a resident of Iowa since his childhood and it was his contention that that residence had never been changed, notwithstanding the fact that he had served under military orders in several other states for long periods of time. The defendant filed a special appearance contending that the plaintiff was not a resident of Iowa. The court cited the constitutional provision, but proceeded to consider the evidence and on the basis thereof concluded that the plaintiff had not changed his domicil and that the suit was properly filed in Iowa. The court reviewed many authorities, including Topic 3 of the Tentative Restatement of the Conflict of Laws which is substantially identical to the same topic of the final edition from which we have quoted. The court said:

"If a soldier stationed at any army post is permitted to live outside the post, it was held In re Cunningham et al., 45 Misc. Rep. 206, 91 N. Y. S. 974, that such person might acquire a domicile there. There seems to be no doubt that a soldier may acquire a new domicile apart from the army, and the fact that he cannot stay in the new home, if called away to the army, does not prevent his forming the animus manendi and acquiring the domicile there. Mooar v. Harvey, 128 Mass. 219; Hodgson v. De Beauchesne, 12 Moore P. S. 285; President of the United States v. Drummond, 33 Beaver, 449; Attorney General v. Pottinger, 30 L. J. Ex. 284." *Harris v. Harris*, supra (205 Iowa 108, 215 N. W. 661, 662).

It is therefore clear that the decision which was favorable to the contention of the soldier to the effect that his domicil had not been changed was based upon a consideration of the evidence and not upon the constitutional provision. See also *Remey v. Board of Equalization of Burlington*, supra.

The case of *St. John v. St. John*, supra (291 Ky. 363, 163 S. W. (2d) 820, 822), is to the same effect. Without so much as mentioning the constitutional provision, the court said:

"The right of a soldier to acquire a legal residence in a locality to which he has been assigned cannot be doubted. 28 C. J. S. Domicile, § 12; Matter of Cunningham, 45 Misc. 206, 91 N. Y. S. 974; Matter of Grant's Estate, 83 Misc. 257, 144 N. Y. S. 567; Percy v. Percy, 188 Cal. 765, 207 P. 369. And this rule holds good even though the soldier is assigned to a military post on land ceded by a state to the federal government so that residence at the post would not constitute him a resident of the state. The text of 17 A. J. 634, based on the authority of Trigg v. Trigg, 226 Mo. App. 284, 41 S. W. 2d 583, says: '* * * if a person engaged in military service by animus and factum establishes a residence near but outside the military post, with the purpose of making such residence the home of himself and his wife, he may acquire a domicil in such place'." *St. John v. St. John*, supra. And see *Bailey v. Norman's Adm'r.*, supra (228 Ky. 790, 15 S. W. (2d) 1005).

In the case of *Knowlton v. Knowlton*, 155 Ill. 158, 39 N. E. 595, the question of residence was determined on the basis of the evidence without reference to the constitutional provision.

In *Schweitzer v. Buser*, 15 N. J. Misc. 217, 190 A. 89, the right of W. P. A. workers to vote in the district where the camp was located was involved. The court quoted the constitutional provision and said that workers in the W. P. A. were not in the military service and "therefore none of the seventy-six persons whose votes are questioned in this proceeding possessed the disqualification of federal service mentioned in the state constitution." However, the nature or extent of the dis-

qualification of persons in military service was not discussed. There is nothing in the case to indicate that a soldier could not acquire a domicil outside of, but near, his station under the conditions specified in the Restatement of Conflict of Laws.

■ We think it clear from the authorities above cited that the various constitutional provisions which state that no soldier shall be *deemed* to have acquired a residence in the state *in consequence of* or *by reason of* having been stationed within the same should be construed as if the word "merely" were inserted immediately before words "in consequence of" and that such constitutional provisions do not prevent the acquisition of domicil by a soldier under the rules of the common law as set forth in the Restatement of Conflict of Laws.

It is claimed by the respondent in this case that we are bound by a more strict construction of the Oregon constitutional provision by reason of the decision in the case of *Darragh v. Bird,* 3 Or. 229. This was an election contest in which it was claimed that certain persons were disqualified from voting for the reason that they were in government employ. The court said:

"* * * Many have fallen into this error for the reason that they make no distinction between an employee of the government and a soldier, seaman or marine. Sec. 4 of article II. of the constitution says: 'For the purpose of voting, no person shall be deemed to have gained or lost a residence by reason of his presence or absence while employed in the service of the United States or of this state.' Sec. 5 of the same article says: 'No soldier, etc., shall be deemed to have acquired a residence in the state in consequence of having been stationed within the same, nor shall he have the right to vote.' The ques-

tion of residence being one of act and intention, the framers of the constitution left the matter entirely to the discretion of the parties themselves. They say we will neither enlarge or restrict the right of persons in this respect, but leave it with them to elect as to where they will claim their residence. The difference between sections 4 and 5 is this: In the 4th the language is 'for the purpose of voting,' etc., evidently intending that the person himself should make the place of his choice his residence. Sec. 5 is: 'No soldier,' etc., 'shall be deemed,' etc., giving to him no discretion in the matter. People ex rel. E. R. Budd v. W. Holman (28 Cal. 123) is a case in point, and very similar. * * *" *Darragh v. Bird,* supra (3 Or. 229, 239-240).

In *Darragh v. Bird,* the court construed Art. II, § 4, in harmony with the conclusion which we have here expressed, but was apparently of the opinion that a different construction should be applied to § 5.

The case was decided in the circuit court of Wasco County and was appealed to the supreme court, but later the appeal was "withdrawn." (See footnote, 3 Or. 568.) The case, therefore, never received the consideration of the supreme court. Further research would have disclosed that the same question was before the supreme court in *Wood v. Fitzgerald,* 3 Or. 568, on appeals in other contests which arose at the same election involved in the Darragh case. This was also an election contest. Speaking of the persons whose voting qualifications were questioned, the court said:

"* * * Both these individuals were employees of the United States government and in the civil service. The facts being as above set forth, the question arises as to the applicability and effect of article II, section 4, of the state constitution to and upon the persons so situated. We cannot see the

legal force or propriety of placing such a construction upon that section as would preclude an employee of the United States or state government from making any change in his domicile that he may desire to make. Though such an one cannot gain or lose a residence by reason of his presence or absence when employed in the service, yet he can establish his domicile and gain a residence at such a point as he may see fit, by taking the proper and appropriate steps so as to do independently of his employment. In The People v. Holden (28 Cal. 137,) it was decided that section 4, of article II, of the constitution of California, (the language of which is almost identical with that of article II, section 4, of the constitution of Oregon,) does not add to or take from the conditions upon which the fact of residence is made to depend; and it was held that that section meant simply that in determining the fact of residence, presence or absence in the service of the United States shall not be taken into account, or in other words, neither presence nor absence in the service of the United States is a condition upon which the fact of residences can be affirmed or denied. * * *" *Wood v. Fitzgerald*, supra (3 Or. 568, 572-573). To the same effect see *Day v. Salem*, 65 Or. 114, 131 P. 1028, Ann. Cas. 1915A, 1011.

It appears that the only phraseology which has ever been employed by a court of this state adverse to the right of a soldier to acquire domicil in Oregon under the conditions set forth in the Restatement of the Conflict of Laws is to be found in the words of the circuit court in *Darragh v. Bird*, supra, as follows: "Sec. 5 is: 'No soldier,' etc., 'shall be deemed,' etc., giving to him no discretion in the matter." *Wood v. Fitzgerald* contains no reference to § 5, or to the rights of a soldier to change his domicil.

The pronouncement in the Darragh case purports to be based upon the California case of *Budd v. Holman*.

The citation is obviously in error and refers to the case of *Budd v. Holden,* 28 Cal. 123. We have already considered that case. It did not involve any person who was in military service, nor is there any provision in the California constitution similar to Art. II, § 5, Or. Const., and attention is again called to the fact that the California court held that provision of its constitution was merely declaratory of the common law. The single sentence in *Darragh v. Bird* which purports to follow *Budd v. Holden* is pure dictum. There may be circumstances under which the statement would be entirely correct, as, for example, in the case of a soldier who is required to reside upon a government reservation. If the circuit court intended to intimate that it is impossible for a person in military service to acquire a domicil of choice, then the dictum is contrary to the weight of authority and is disapproved.

From the foregoing review of authorities, it appears clear that the question as to the acquisition by the plaintiff of a domicil in the state of Oregon may be determined by the principles of the common law notwithstanding the provisions of Art. II, §§ 4 or 5.

■ The domicil of the plaintiff was ultimately a question of law to be determined by the court in view of the evidence. The plaintiff testified that he was, in fact, living in and had been a resident of Oregon for more than one year. This evidence, taken alone, was sufficient to raise a *prima facie* case of domicil. *Ames v. Duryea,* supra; *Gallagher v. Gallagher,* supra; Story, Conflict of Laws, § 46. But when it was also made to appear that the plaintiff was in the armed forces of the United States; was drafted in Ohio and sent by military

authority to a permanent station, Swan Island, in Oregon, the *prima facie* case was overcome.

"* * * Nor is it even prima facie evidence of domicile when the nature of the residence either is inconsistent with, or rebuts the presumption of the existence of an animus manendi, Dicey, Dom. Rule 19 * * *." *Schweitzer v. Buser,* supra (15 N. J. Misc. 217, 190 A. 89, 93).

In *Gallagher v. Gallagher,* the court said:

"We have seen no decision holding that the testimony of a party as to intention to fix a domicile at some time in the future would be sufficient to fix it, when not accompanied by any act, or declaration even, to that effect. * * *" *Gallagher v. Gallagher,* supra (Tex. Civ. App., 214 S. W. 516, 518).

In every case of acquisition of a new domicil of choice, the fact and intent must concur. 19 C. J., Domicile, § 9, p. 401, § 39, p. 418; 28 C. J. S., Domicile, § 9, p. 11, § 12, g. (1), p. 28.

■ In the case of one in military service, we think that the mere fact of living in a state and at a station therein under military compulsion does not satisfy the factual requirements for a domicil of choice even if the *animus manendi* be shown. In *Gallagher v. Gallagher,* the court said:

"* * * while it seems from some authorities cited by appellee that a soldier can abandon his domicile of origin and select another, yet those very authorities hold that, in order to show a new domicile during the term of enlistment, it must be shown by the 'clearest and most unequivocal proof. * * *'" *Gallagher v. Gallagher,* supra (Tex. Civ. App., 214 S. W. 516, 517).

In *Ex parte White*, supra (228 Fed. 88, 90), the court said:

"Assuming the proposition that a member of the army may change his domicile, if not inconsistent with the military situation, to be one based upon reason, and established by the authorities, it still remains that the intention to change must be clear, and must be associated with something fixed and established as indicating such a purpose, and the circumstances in this case are against such an idea." *Ex parte White*, supra. To the same effect, see *Sealey v. United States*, supra (7 Fed. Supp. 434, 437) and *Hawkins v. Winstead, Jr.*, supra (Idaho, 138 P. (2d) 972).

In *Harris v. Harris*, supra, the court said:

"It is true that an officer or a private may establish a home near his military station, and thus acquire a domicile there, but this must be established by independent evidence of a change of domicile to that place. * * *" *Harris v. Harris*, supra (205 Iowa 108, 110, 215 N. W. 661). And see *Schweitzer v. Buser*, supra; and *Dicks v. Dicks*, supra.

Again, it has been held that intent must be supported by *actual conduct*. "An intent to acquire a new domicile is futile where it is not consummated." *In re Hoff's Estate*, supra (35 N. Y. S. (2d) 60).

■ We have searched in vain for any evidence in the case at bar that meets residence requirements. The fact of residence at a naval station under government orders is not "independent evidence" of a change of domicil, nor can we find any "actual conduct" voluntary in character, showing that the plaintiff had taken up an abode away from his station or had been permitted by military authorities to choose or establish such abode. He was originally domiciled in Ohio where

he was drafted. He said he intended to establish a home in Oregon "when I got stationed there." In short, he was ready, able, and willing, but there is no evidence that he had, in fact, established a home either for himself or for her, or that he was permitted to, or had, established any dwelling place away from his station.

The evidence fails to disclose the jurisdictional fact of domicil in Oregon for the period of one year and the decree of the circuit court is affirmed.