IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

KATHARINA H. VEENENDAAL,            )
                                    )
            Plaintiff,              )       TC-MD 140384C
                                    )
        v.                          )
                                    )
DEPARTMENT OF REVENUE,              )
State of Oregon,                    )
                                    )
            Defendant.              )       **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered April 30,

2015. This court did not receive a statement of costs and disbursements within 14 days after its

Decision was entered. *See* Tax Court Rule-Magistrate Division 16 C(1).

Plaintiff appeals Defendant's Notice of Determination and Assessment for tax years 2007

and 2008.[1] Trial was held in the courtroom of the Oregon Tax Court on April 15, 2015, in

Salem, Oregon. Plaintiff appeared and testified on her own behalf. Debbie Smith appeared and

testified for Defendant. None of Plaintiff's exhibits were admitted into evidence because

Plaintiff did not provide proof of service on Defendant as required by Tax Court Rule-Magistrate

Division (TCR-MD) 12 C and Defendant's representative testified she did not receive any

exhibits from Plaintiff. The court did receive a collection of unmarked exhibits from Plaintiff

without a certificate of service or other proof she served a copy on Defendant. Defendant's

Exhibits A to G were received without objection.

/ / /

---

[1] Plaintiff's original Complaint appealed tax years 2005 to 2008, inclusive. (Ptf's Compl at 1.) That Complaint was orally amended at Defendant's request at a December 10, 2014, case management hearing, because Defendant had not assessed the two earliest tax years (2005 and 2006), but had assessed 2007, 2008 and 2011. The court's action in amending the Complaint was memorialized in an Order issued by the court December 16, 2014. However, at trial Plaintiff advised the court she was not challenging Defendant's assessment for 2011 because she was a resident of Oregon that year.

## I. STATEMENT OF FACTS

A.     *Plaintiff's Testimony*

For the years at issue, Plaintiff owned residential real property in Oregon and Washington. Most of those properties were rented out and generated income that Plaintiff reported on her 2007 and 2008 federal income tax returns. During each year, Plaintiff owned two rental properties located in Oregon, and a third in Washington. (Def's Ex F at 3; G at 4.) Plaintiff also owned two other homes in Oregon that she sold in 2007. (Def's Ex F at 6.) Plaintiff reported a capital gain of $14,000 on the sale of one of those homes, but no gain on the other. (*Id.*)

Plaintiff testified that she bought a laundromat in Vancouver, Washington, in 2005. According to her testimony, Plaintiff was living in a manufactured home on the Oregon side of the Oregon and Washington border at that time. That home was located on Hayden Island. Plaintiff testified that prior to that, she lived in a home on SE 26th Street in Portland that she had purchased in 2004, and sold in 2007. Plaintiff did not testify as to when she moved from the home on SE 26th Street to the manufactured home on Hayden Island.

Plaintiff testified that she found the commute from Hayden Island over the Interstate Bridge traversing the Columbia River to her laundromat in Washington too difficult because of traffic congestion, so she sold the manufactured home on Hayden Island in Oregon and moved to a home she bought in Vancouver, Washington, in July 2006. The Washington home was approximately one and one-half miles away from Plaintiff's laundromat business.

Plaintiff testified that in late 2009 she sold the laundromat, sold her home in Vancouver, and moved to a home at 356 SE Maple Street in Hillsboro, Oregon. The Hillsboro property was a triplex. Plaintiff testified she bought the triplex at the end of 2008, and that there was one

tenant living in it at the time. Plaintiff reported collecting $925 in rental income from the Hillsboro triplex in 2008. That figure appears on her 2008 federal Schedule E. (*See* Def's Ex G at 4.) Plaintiff testified that her life partner at that time was diagnosed with cancer in 2006 and was in hospice care for four months before passing away in May 2010. Plaintiff testified that she cared for her life partner during the latter years of his life, and that after moving to Oregon in 2009 she earned income selling items on the Internet through a web site she had established.

On her federal tax returns, Plaintiff reported income from various rental properties located in Oregon in 2007 and 2008. (*See* Def's Ex F at 3; G at 4.) Plaintiff testified that in 2007 she owned a mobile home on Sunset Beach Lane in Warrenton, Oregon, and a triplex on Avenue E in Seaside, Oregon. Plaintiff reported rental income of $3,600 from the Warrenton mobile home and $2,224 from the Seaside triplex. (Def's Ex F at 3.) Plaintiff also reported rental income of $4,800 in 2007 from her home in Vancouver, Washington, where she testified she lived with her life partner and her grandson. (*Id*.) Plaintiff testified on cross-examination that the rental income from the Vancouver home was from her "home office."

Plaintiff testified that in 2008 she owned a triplex on Maple Street in Hillsboro, Oregon, and a condominium on NE Skipanon Drive in Warrenton, Oregon. Plaintiff testified that she sold the mobile home in Warrenton in 2007, and the triplex in Seaside in 2008; the triplex was sold to buy the Warrenton condominium. Plaintiff reported rental income from the Hillsboro triplex and Warrenton condominium in the amounts of $925 and $6,000, respectively. (Def's Ex G at 4.) Plaintiff also reported $12,000 in rental income from her Vancouver home in 2008, but did not testify as to the source of that income (*i.e*., whether it was associated with her "home office" or came from some other source). Plaintiff testified she was using that home as her personal residence in 2008. Plaintiff did not present any further testimony.

B.      *Defendant's Cross-Examination*

Plaintiff did not return to the court to continue with the trial after the lunch recess. Because of this, Defendant had only a brief opportunity to cross-examine Plaintiff. Plaintiff had earlier testified that she suffered from post-traumatic stress disorder due to a number of violent actions by her ex-husband against herself, her daughter, and a property she previously owned. After the lunch hour recess, a gentleman that had accompanied Plaintiff to trial advised the court that Plaintiff had phoned her doctor during the lunch break and was advised not to return to court if trial was causing her too much emotional stress. No documentation from Plaintiff's doctor was presented to the court before or during the trial concerning Plaintiff's medical condition. Nor was any evidence presented concerning the actions of Plaintiff's ex-husband that caused the emotional problems Plaintiff reported from her post-traumatic stress disorder.

Defendant's cross-examination of Plaintiff before recess covered only several matters. Defendant questioned Plaintiff about a bankruptcy petition she filed in November 2010. On that form, Plaintiff listed the home on Maple Street in Hillsboro, Oregon as her "family home," and the home in Vancouver, Washington, as a "rental home." (*See* Def's Ex D at 1.) Plaintiff explained that she listed the Vancouver, Washington, home as a rental on her bankruptcy petition because she had moved from Washington to Oregon in 2009 after selling her laundromat, and had rented out the home in Vancouver.

Plaintiff was asked why she checked a box on her bankruptcy petition indicating that she had not "moved within three years immediately preceding the commencement of [the bankruptcy petition]," if in fact she had only recently moved to Oregon from Washington. (Def's Ex B at 1.) In response, Plaintiff testified that she forgot to list her prior addresses. It was also on cross-

/ / /

examination that Plaintiff explained that the rental income reported on her Vancouver home in 2007 was income from her "home office."

Plaintiff acknowledged on cross-examination that she reported $14,000 in capital gains in 2007 from the sale of a home in Hammond, Oregon. Plaintiff was asked why she did not file an Oregon return for 2007 if she had Oregon-source income that year from the sale of the Hammond, Oregon, home. Plaintiff responded that she lived in Washington and did not know that she was required to file an Oregon return reporting the income from the sale of the Oregon home that year.

Defendant questioned Plaintiff about the $9,636 depreciation she reported in 2008 on the home located on Maple Street in Hillsboro, Oregon. In response, Plaintiff testified that she purchased that property (a triplex) at the end of 2008 and that there was a tenant living in the property at the time. Plaintiff testified that she collected "about a month of rent" from that property in 2008, but that after making extensive repairs over the course of several months, she ended up with a loss on that property.

Plaintiff was questioned about her Oregon driver's license. Defendant submitted a two-page exhibit showing that Plaintiff obtained her Oregon driver's license in 1970 and renewed it on a number of occasions, the last of which was in December 2007. (Def's Ex C at 1-2.) Defendant asked why Plaintiff renewed her Oregon driver's license in 2007 if she was living in Washington and considered herself a Washington resident that year. Plaintiff explained that she was in a special program for "protected persons" because of actions taken against her and her family and property by her ex-husband. Plaintiff testified that she was advised by the Oregon State Police that it would be permitted to renew her Oregon driver's license so that her whereabouts would be more difficult for her ex-husband to ascertain. In Plaintiff's words, she

renewed her Oregon licensed to "hide from [her] ex-husband." Plaintiff did not have a Washington driver's license.

As stated above, Plaintiff did not return to court after the lunch recess and Defendant was therefore unable to proceed with cross-examination. Defendant's representative then advised the court that she did not wish to present any further evidence or put on a case for the state; her only interest was in getting Plaintiff to file returns for the years at issue and other years because Plaintiff had Oregon-source income and it was her opinion that Plaintiff was an Oregon resident.

Plaintiff contends she was a resident of Washington from July 2006 until November 2010. Plaintiff did not file Oregon income tax returns for the years at issue. Defendant determined Plaintiff had Oregon taxable income from the rental properties and other sources, including the gain on the sale of a home in 2007, and issued failure to file assessments for 2007 and 2008 on July 28, 2014. Plaintiff subsequently submitted federal income tax returns for 2007 and 2008 on December 8, 2014.

## II. ANALYSIS

A.  *Oregon's Statutory Jurisdiction to Tax*

The issue in this case is whether Plaintiff owes Oregon income taxes for the tax years at issue. The determination of Plaintiff's tax liability, if any, is affected by her residency status.

Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source income. ORS 316.037(1), (3).[2] ORS 316.037(1)(a) imposes a "tax * * * on the entire taxable income of every resident of this state." ORS 316.037(3) imposes a "tax * * * on the taxable income of every full-year nonresident that is derived from sources within this state." ORS 316.022(6) defines taxable income as "the taxable income as defined in subsection

---

[2] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2005.

(a) or (b), section 63 of the Internal Revenue Code, with such additions, subtractions and adjustments as are prescribed by [chapter 316]." ORS 316.362 requires Oregon residents and nonresidents with Oregon source income to file returns with this state.

ORS 316.127 specifies the method for determining the income of nonresidents derived from Oregon sources. That statute provides that "[t]he adjusted gross income of a nonresident derived from sources within this state is the sum of * * * [t]he net amount of items of income, gain, loss and deduction entering into the nonresident's federal adjusted gross income that are derived from or connected with sources in this state including * * * [t]he ownership or disposition of any interest in real or tangible personal property in this state." ORS 316.127(1)(a); (2)(a).

Plaintiff had Oregon-source income from the rental properties she owned in Oregon and the sale of at least one of the two Oregon homes she sold in 2007.[3] Plaintiff was therefore required to file Oregon income tax returns for 2007 and 2008, and pay taxes if she had taxable income after allowing for deductions and exemptions. Plaintiff's Oregon tax liability would be larger if she was an Oregon resident, because it would include income earned in Washington. ORS 316.037(1)(a). Also, Plaintiff concedes she was an Oregon resident beginning in late 2010, and there is no evidence or assertion by Plaintiff that she later abandoned her Oregon domicile.

Plaintiff therefore owes income taxes to Oregon for 2011. Defendant assessed Plaintiff for 2011, and Plaintiff did not submit her 2011 federal return or any other evidence regarding that tax year. Plaintiff advised the court on the morning of trial that she was not contesting Defendant's assessment for 2011. Defendant's assessment for 2011 therefore stands. That narrows the court's inquiry to 2007 and 2008. The court will look first at the issue of residency.

---

[3] Plaintiff reported no gain on the sale of one of the Oregon homes she sold. If there was no gain, there would be no associated income tax liability.

B. *Resident Defined*

ORS 316.027 defines "resident" as follows:

"(1) For purposes of this chapter, unless the context requires otherwise:

"(a) 'Resident' or 'resident of this state' means:

"(A) An individual who is *domiciled* in this state unless the individual:

"(i) Maintains no permanent place of abode of this state;

"(ii) Does maintain a permanent place of abode elsewhere; and

"(iii) Spends in the aggregate not more than 30 days in the taxable year in this state."

ORS 316.027 (emphasis added.)

C. *Domicile Defined*

As this court recently noted in *Ashby v. Dept. of Rev.*, 21 OTR 47 (2012) (*Ashby*), Oregon statutes do not define the word "domicile." (*Id*. at 51.) The court in *Ashby* recently looked to *Black's Law Dictionary*, which provides the following definition:

> "The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which the person intends to return and remain even though currently residing elsewhere."

(*Id*., *citing Black's Law Dictionary* 523 (8th ed 2004).

Domicile is a common law concept comprised of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228 (1992) (citing *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952)). That determination, while based on intent, must be established by all the facts and circumstances. *dela Rosa*, 313 Or at 289-290.

Oregon Administrative Rule (OAR) 150-316.027(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a

person intends to return to after an absence."[4] While an individual can have more than one residence, he "can have but one domicile." *dela Rosa*, 313 Or at 289 (internal quotation marks omitted); *see also Zimmerman v. Zimmerman* (*Zimmerman*), 175 Or 585, 591, 155 P2d 293 (1945); OAR 150-316.027(1)(a). "The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." *Duncan v. Dept. of Rev.*, TC 4315 , WL 792454 at *1 (Nov 3, 1998).

Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298-99 (1971); *see also dela Rosa*, 313 Or at 289-90 (stating that domicile, while based on intent, must be established by all the facts and circumstances). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual." *Butler v. Dept. of Rev.*, TC-MD 050801D, WL 2041284 at *4 (July 18, 2006).

In *Zimmerman*, the Oregon Supreme Court "approved" certain quotations from *Restatement, Conflict of Laws* (1934), regarding domicile. *Zimmerman*, 175 Or at 591-92. Of relevance here, the court noted that " '[a] home is a dwelling place of a person, distinguished from other dwelling places of that person by the intimacy of the relation between the person and the place[,] [and that] [f]actors important in determining * * * whether a dwelling-place is a person's home [include] [the] physical characteristics [of the home], [t]he time [the person] spends therein, [t]he things [the person] does therein, [t]he persons and things therein, [and] [the person's] mental attitude toward the place.' " *Id.* at 592. The administrative rule states that

---

[4] The court's references to the Oregon Administrative Rules (OARs) are to the rules in effect in 2007.

factors contributing to a determination of domicile "include family, business activities and social connections." OAR 150-316.027(1)(a).

D.    *Changing Domicile*

In *Davis v. Dept. of Rev.* (*Davis*), 13 OTR 260, 264 (1995), this court quoted the Oregon Supreme Court's ruling in *In Re Noyes' Estate*, 182 Or 1, 185 P2d 555 (1947) that "[i]n order to change domicile, an individual must not only establish a residence in the new place but have an intention to abandon the old domicile and acquire a new one." Stated another way, "the individual must (a) intend to abandon their former domicile; (b) intend to acquire a new domicile; and (c) actually reside in the new home or residence." *Kaufmann v. Dept. of Rev.*, TC-MD 120616C, WL 1900462 at *5 (May 8, 2013).

E.    *Analysis of Plaintiff's Case*

There is insufficient evidence in this case to determine if Plaintiff abandoned her Oregon domicile and acquired a new domicile in Washington. Plaintiff did testify that she moved from Oregon to Washington in July 2006 and that she owned a home in Vancouver, Washington, that she lived in for the years at issue--2007 and 2008. Plaintiff testified that she moved to Washington in 2006 after buying a business in Vancouver, Washington, in 2005. Plaintiff explained that she moved to Washington to avoid the traffic congestion on Interstate 5 she encountered traveling to her business in Washington from her home in Oregon.

However, Plaintiff owned a mobile home and a triplex in Oregon in 2007, as well as two other homes, one of which was located in a residential area in Southeast Portland that she testified she bought in 2004 and resided in as her primary residence before selling it in April 2007. Plaintiff owned another triplex and a condominium in Oregon in 2008. Plaintiff reported receiving rental income from the mobile home, the two triplexes, and the condominium in the

years she owned those properties. That would tend to suggest that those properties were indeed rental properties and not Plaintiff's personal residence.

However, Plaintiff also reported receiving rental income on the home in Vancouver, Washington, that she testified was her personal residence in 2007 and 2008. Additionally, Plaintiff testified that she in fact moved into the triplex she owned in Hillsboro Oregon for which she reported receiving nominal rental income in 2008. There is no independent corroborating evidence as to when Plaintiff acquired that property. Plaintiff testified she thought that triplex was purchased in "late 2008" but there is no deed or other documentary evidence to corroborate that claim.

Plaintiff had a laundromat business she owned in Washington, but there is virtually no evidence on the question of whether and to what extent, if any, Plaintiff was involved in the day-to-day operations of that business.

Plaintiff had no exhibits to support her claim of residency in Washington for the years at issue. Moreover, Plaintiff renewed her Oregon driver's license in December 2007, even though she asserts she was a resident of Washington that year.

Plaintiff refused to continue participating in the trial shortly after she had presented her case and Defendant began its cross-examination. That action deprived Defendant of the opportunity and right to continue its cross-examination of Plaintiff. Defendant had legitimate questions regarding Plaintiff's residency and income-producing activities for the years at issue. Thus, even if the evidence Plaintiff presented in her case in chief tends to support her claim that she moved from Oregon to Washington in 2006 and abandoned her Oregon domicile in favor of a new domicile in Washington, a significant feature of the adversarial system of justice in this country and state is that the opposing party be afforded an adequate opportunity to cross-examine

a witness to determine if the witness is credible and if there is other evidence undercutting the adverse party's case. Defendant was denied that opportunity this case.

What is clear is that Plaintiff had Oregon-source income in both 2007 and 2008. Plaintiff has the burden of proof and is required by statute to prove her case by a "preponderance" of the evidence. ORS 305.427. This court has previously stated that a preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Yarbrough v. Dept. of Rev.*, TC 5075 (Sept 18, 2012) WL 4094875 *3, *citing Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). While that is not a particularly high standard, a party cannot meet its burden when, as in this case, the party fails to return to court and submit to cross-examination after presenting her case.

On the evidence before it, the court is unable to determine by a preponderance of the evidence that Plaintiff abandoned her Oregon domicile and acquired a domicile in Washington at any time in 2006, as she claims, or at any other time. Accordingly, the court concludes that Plaintiff was domiciled in Oregon in 2007 and 2008. Plaintiff reported on her federal income tax returns for 2007 and 2008 that she received rental income from various properties and a gain of $14,000 on the sale of a home in Oregon in 2007. Plaintiff also had income from a laundromat she owned and operated that was located in the state of Washington. Defendant's assessments against Plaintiff for 2007 and 2008 are therefore upheld.

## III. CONCLUSION

The court concludes that Plaintiff's appeal of Defendant's Notices of Determination and Assessment for 2007 and 2008 is denied because Plaintiff had Oregon-source income for both of those years, did not file Oregon income tax returns, and failed to establish by a preponderance of the evidence that she had abandoned her Oregon domicile. The court further concludes that

Defendant's assessment for 2011 is upheld because Plaintiff withdrew her challenge to that assessment at the commencement of her trial, acknowledging that she was in fact an Oregon resident in 2011. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal for 2007 and 2008 is denied as explained above; and

IT IS FURTHER DECIDED that Defendant's assessment against Plaintiff for 2011 is upheld because Plaintiff withdrew her challenge to the assessment.

Dated this ____ day of May 2015.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by* <u>*mailing*</u> *to: 1163 State Street, Salem, OR 97301-2563; or by* <u>*hand delivery*</u> *to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within* <u>*60*</u> *days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on May 18, 2015.*