452                    May 23, 2012           No. 55

IN THE OREGON TAX COURT
REGULAR DIVISION

Thomas W. GORSKI,
*Plaintiff,*
*v.*

DEPARTMENT OF REVENUE,
*Defendant.*
(TC 4971)

Plaintiff (taxpayer) appealed a Magistrate Division decision as to his tax domicile for the 2004 and 2005 tax years, arguing that he was a part-year Oregon resident for tax year 2004, and that he was not a resident of Oregon at all for tax year 2005. Defendant (the department) in turn, argued that taxpayer never abandoned his domicile in Oregon, never established a new domicile in either Texas or Florida, and therefore continued to be a resident of Oregon throughout the tax years at issue.

Trial was held July 25, 2011, in the courtroom of the Oregon Tax Court, Salem

Plaintiff Thomas W. Gorski argued the cause *pro se.*

James C. Wallace, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered May 23, 2012.

**HENRY C. BREITHAUPT, Judge.**

### I.   INTRODUCTION

This case comes before the court for decision following a trial in the Regular Division. Plaintiff (taxpayer) originally filed his personal income tax returns for the tax years 2004 and 2005 as a full-time resident of the state of Oregon. Taxpayer now argues that he was in fact a part-year resident of Oregon during the 2004 tax year and a nonresident during the 2005 tax year.

### II.   FACTS

At trial the court heard a great deal of testimony concerning taxpayer's activities and state of mind during

the 2004 and 2005 tax years. The following is an attempt to condense that testimony.

A.  *Taxpayer's Movements—1992 to Present*

Taxpayer moved to Oregon from the state of Washington in February of 1992. From February of 1992 through March of 2004, taxpayer lived at a house on Ewald Avenue in Salem, Oregon, with his wife and stepson. Taxpayer does not dispute that he was an Oregon resident from February of 1992 through March of 2004.

In March of 2004, taxpayer left Oregon and moved to El Paso, Texas. Taxpayer's wife and stepson continued to reside in the house on Ewald Avenue in Salem. Taxpayer remained in Texas from March of 2004 through December of 2004. In late December of 2004, taxpayer relocated to Florida.

Taxpayer remained in Florida from roughly the end of December 2004, through the beginning of October 2005. During this time, taxpayer lived variously in the cities of Clearwater (late December of 2004 through January of 2005), Seminole (January through February 2005), St. Petersburg (February through July 2005), and West Palm Beach (July through October 2005).

In October of 2005 taxpayer returned to Oregon. From October of 2005 through December of 2005, taxpayer stayed with his spouse and stepson in the house on Ewald Avenue in Salem. Taxpayer also appears to have made trips to Anchorage, Alaska; Tucson, Arizona and West Palm Beach, Florida, for job training purposes during this time, though it is not entirely clear in the record how many days taxpayer spent in Oregon and how many he spent out of state during this period. At trial taxpayer testified that he spent 45 days in Oregon during the tax year 2005. However, in a document provided to Defendant (the department) by taxpayer and entered in the record by the department as an exhibit in these proceedings, taxpayer states that he spent 22 days at the house on Ewald Avenue. In another, later version of the same document—this one entered in the record by taxpayer—taxpayer claims to have spent 34 days at the house on Ewald Avenue and an additional ten days doing job training in Anchorage, Alaska and Tucson, Arizona.

In early December of 2005, taxpayer again left Oregon and spent the following two months in Khartoum, Sudan. From February of 2006 through the beginning of June of 2006, taxpayer lived in Kabul, Afghanistan. In June of 2006 taxpayer returned to Oregon to recover from a serious illness. Taxpayer remained in Oregon through January of 2007.

In January of 2007, taxpayer again relocated—this time to Utah. Taxpayer remained in Utah for roughly the following 11 months, living in the cities of South Ogden (January through July 2007) and Roy (July through November 2007). In November of 2007 taxpayer returned again to Oregon, where he continues to reside at the time of writing.

B.   *Taxpayer's Occupation and Employment*

Taxpayer is a commercial jet aircraft pilot. At the time taxpayer first left Oregon in March of 2004, taxpayer was qualified to fly jet aircraft only as a first officer. At trial taxpayer testified that it was his ambition to qualify to fly jet aircraft as a captain, and that he lacked opportunities to do so in Oregon. While living in both Texas and Florida, taxpayer worked as an "on demand" charter pilot. The "on demand" nature of this job required him to be on call 24 hours a day and available for work on one hour notice, with only 4.3 days off per month.

Taxpayer continued to work as a first officer on commercial jet aircraft while living in Texas and Florida. Taxpayer testified that shortly after beginning work in Texas, he concluded that the work environment would not be conducive to his staying on as a long term employee. Taxpayer therefore applied for several jobs in other parts of the country. Many of these jobs would have required taxpayer to relocate from Texas if he were to be hired.

After moving to Florida, taxpayer continued to work toward his goal of becoming a commercial jet aircraft captain. Taxpayer also continued applying for jobs in various parts of the country. At some point during taxpayer's stay in Florida, taxpayer accepted employment with Evergreen International Airlines (EIA), based in McMinnville, Oregon.

In October or November of 2005, shortly after accepting employment with EIA, taxpayer completed the training and experience requirements necessary to qualify as commercial jet aircraft captain. Taxpayer's stays in Sudan and Afghanistan during 2006 were in connection with his employment by EIA. At the time of the trial in this case, taxpayer continued to be employed by EIA.

C. *Taxpayer's Living Arrangements in 2004 and 2005*

During the tax years 2004 and 2005, taxpayer's spouse and stepson remained in Oregon.[1] During the tax years in question, taxpayer's spouse lived in a house on Ewald Avenue in Salem. It is unclear whether taxpayer had any legal interest in this house. Documents provided to the department by taxpayer and entered in the record by the department indicate that taxpayer "owned" the house on Ewald Avenue, having purchased it "[o]ver [a] 5 year period 1991-1996." However, in his briefing and at trial taxpayer represented that the house belonged solely to his spouse and that taxpayer did not have any interest in it. Taxpayer testified that he and his spouse have a joint checking account at a bank in Salem that is used for the upkeep of the house on Ewald Avenue. In his briefing taxpayer alleges that he did not contribute to that account while living in Texas and Florida. However, taxpayer admitted at trial that in November of 2005, while staying in Salem with his spouse, he drew on a checking account that he held jointly with his spouse in order to pay the property tax for the house on Ewald Avenue. Taxpayer further testified that he left roughly 40 percent of his personal possessions at the house on Ewald Avenue when he left for Texas.

While living in Texas, taxpayer rented an unfurnished apartment from a friend's daughter's acquaintance. Taxpayer also opened a bank account at a Wells Fargo branch in El Paso, Texas.

While living in Florida, taxpayer stayed at a number of locations. The exhibits entered in the record by taxpayer indicate that over the course of roughly ten months in Florida, taxpayer moved no fewer than four times. The

---

[1]  At trial, taxpayer stipulated to the veracity of this statement.

documents submitted by taxpayer indicate that during this time taxpayer primarily rented rooms in furnished, occupied homes. Taxpayer's access to household amenities such as kitchen or laundry facilities varied depending on his landlord. Taxpayer testified that in one instance, at least, he rented a furnished, unoccupied condominium with the understanding that he was to vacate the premises when the owner, who lived primarily in New York City, wished to use the condominium. During one such interval, taxpayer used his spouse's address in Salem as his mailing address, in the apparent belief that he would not reliably be able to collect his mail while his landlord was using the condominium.

Taxpayer's work as an on demand charter pilot prevented him from visiting Oregon while he was working on Texas and Florida. Taxpayer testified at trial that his spouse occasionally travelled from Oregon to visit him. Taxpayer also states in his briefing that he made occasional visits to Oregon to convince his spouse to move to Florida with him, but the number and frequency of any such visits cannot be discerned from the record before the court.

D.  *Taxpayer's other Connections to Oregon, Texas, and Florida*

Throughout 2004 and 2005, taxpayer was registered to vote in Oregon. Taxpayer likewise continued to use his Oregon driver's license throughout his time in Texas. Taxpayer testified that in January of 2005—roughly one month after moving to Florida—taxpayer was cited by a Florida law enforcement officer for driving without a valid Florida driver's license. Taxpayer subsequently obtained a Florida driver's license, but retained his unexpired Oregon driver's license as well. In addition, taxpayer's Florida driver's license lists the house on Ewald Avenue in Salem as his address.

The record contains little information about taxpayer's ties to Texas beyond what has been stated above. Documents submitted to the department by taxpayer and entered in evidence by the department indicate that while living in Texas, taxpayer belonged to the congregation of St. Patrick's Cathedral in El Paso, Texas.

The record does, however, contain evidence tending to show that taxpayer has additional ties to Florida. Specifically, taxpayer has a brother that lives in Florida and his deceased parents are buried in Florida. In addition, taxpayer acquired a model year 1993 Ford Taurus while living in Florida, that taxpayer registered and insured in Florida. In a document entered in the record by taxpayer, taxpayer states that because he planned to return to Florida, he left that vehicle in Florida with a friend when he returned to Oregon in October of 2005. Taxpayer claimed membership in several social and religious organizations while living in Florida, including the congregations of St. Anne Catholic Church in West Palm Beach; the Cathedral of St. Jude the Apostle in St. Petersburg; the Tampa Friends of Old Time Dance; the Alano Beach Club, and the Ft. Lauderdale Meditation Group.

While living in both Texas and Florida, taxpayer ensured that his personal vehicles were insured on in-state policies. Taxpayer also appears to have kept his Federal Aviation Administration documentation up to date with regard to changes of address.

E.  *Taxpayer's Oregon Tax Returns for the 2004 and 2005 Tax Years*

For the 2004 and 2005 tax years, taxpayer initially filed joint Oregon Income Tax returns with his spouse as a full time Oregon resident. In both years the joint, full-year resident returns resulted in Oregon Income Tax liability.

In April of 2007, taxpayer filed amended Oregon Income Tax returns for the 2004 and 2005 tax years, this time filing as a part-year resident of Oregon and claiming "married filing separately" filing status on both returns. These amended returns, if accepted, would have effectively eliminated taxpayer's Oregon Income Tax liability for both the 2004 and 2005 tax years.

In January of 2008, taxpayer again filed amended Oregon Income Tax returns for the 2004 and 2005 tax years. This time, taxpayer filed as a part-year resident and claimed "married filing jointly" filing status. These returns, if accepted by the department without adjustment, would have resulted in substantial refunds for both 2004 and 2005.

On September 25, 2008, the department sent a letter to taxpayer requesting additional information and provided taxpayer with a document entitled "Legal Residence (Domicile) Questionnaire." On October 3, 2008, taxpayer responded to the department by letter indicating that the questionnaire provided by the department did not contain sufficient space to describe his movements during the 2004 and 2005 tax years. Taxpayer enclosed with this letter a document containing the information asked for in the questionnaire, but somewhat altered in format to permit him to more fully describe his movements. On October 7, 2008, taxpayer sent a second letter to the department with a second taxpayer-prepared version of the domicile questionnaire enclosed. A comparison of these two documents reveals several discrepancies in their content. For the purposes of this opinion, the court will refer to the first taxpayer-produced document as "taxpayer's first domicile questionnaire" and the second taxpayer-produced document at "taxpayer's second domicile questionnaire."

Upon review of the information provided by taxpayer, the department concluded that taxpayer was domiciled in Oregon for the entirety of the 2004 and 2005 tax years, and therefore issued notices of proposed adjustments denying taxpayer's claims for refunds and advising taxpayer of his right to a conference or to submit written objections to the proposed adjustment. Taxpayer opted to submit written objections, that the department denied in a letter dated July 10, 2009. Taxpayer then appealed to the Magistrate Division.

The magistrate found for the department on the grounds that taxpayer (a) failed to show that taxpayer had abandoned his domicile in Oregon; and (b) failed to show that taxpayer had established a new domicile, either in Texas or Florida. *Gorski v. Dept. of Rev.*, TC-MD No 091291B (Nov 24, 2010). Taxpayer now appeals to the Regular Division.

At trial in the Regular Division, taxpayer advanced a slightly different argument than he had in the Magistrate Division. Whereas in the Magistrate Division taxpayer argued that he was a part-year Oregon resident both in the tax year 2004 and in the tax year 2005, taxpayer now

argues that he was a part-year Oregon resident only in the tax year 2004. As to the tax year 2005, taxpayer now argues that he was not a resident of Oregon at all during that tax year.

### III.   ISSUE

What was taxpayer's residency status in Oregon during the tax years 2004 and 2005?

### IV.   ANALYSIS

ORS 316.037(1)(a) imposes a "tax *** on the entire taxable income of every resident of this state." ORS 316.037(2) likewise imposes a "tax *** upon the entire taxable income of every part-year resident of this state."[2] However, ORS 316.037(2) further provides that in the case of a "part-year resident" the tax is to be calculated "as if the part-year resident were a full-year resident" and then multiplied by a ratio that reflects the number of days in the given tax year that the part-year resident taxpayer spent as a resident of Oregon, versus the number of days spent as a nonresident. This typically results in a lower Oregon income tax liability for part-year residents of Oregon than would otherwise be the case for a similarly situated full-year resident.

ORS 316.027(1) states, in pertinent part:

"(a)   'Resident' or 'resident of this state' means:

"(A)   An individual who is domiciled in this state unless the individual:

"(i)   Maintains no permanent place of abode in this state;

"(ii)   Does maintain a permanent place of abode elsewhere; and

"(iii)  Spends in the aggregate not more than 30 days in the taxable year in this state[.]"

ORS 316.022 (5) defines a "part-year resident" as "an individual taxpayer who changes status during a tax year from resident to nonresident or from nonresident to resident." Phrased differently, an individual is a resident of Oregon if that individual is domiciled in Oregon, unless the taxpayer falls

---

[2]  All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.

within the safe haven provided by ORS 316.027(1)(a)(A)(i) to (iii). An individual is a part-year resident of Oregon for a given tax year if that individual's status as a resident of Oregon or as a nonresident of Oregon changes during that tax year.

A.    *Taxpayer's Domicile during the 2004 and 2005 Tax Years*

The term "domicile" is not defined in Oregon's tax statutes. However, the term is commonly defined as:

> "The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."

*Black's Law Dictionary* 523 (8th ed 2004.)[3] Everyone has a domicile, and an individual can only have one domicile at any one time. *Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945). In order to change domicile, an individual must (a) intend to abandon that person's former domicile and acquire a new one, and (b) actually acquire a new domicile. *Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). The intent to abandon an old domicile and to acquire a new one must be a present intent. *Oberhettinger v. Dept. of Rev.*, 4 OTR 62, 64 (1970). That means that it cannot be an intention merely to settle in a new place at some uncertain point in the remote future. *Id.*

In addition, the intention cannot be conditioned on the occurrence or nonoccurrence of some future event or contingency. *Id.* This is because a contingent intention to abandon one's current domicile and acquire a new one is merely an intention to abandon one's current domicile and acquire a new domicile *if certain occurrences should come to pass.* If those occurrences should not take place, or if other, then-unforeseen occurrences take place, there is no intention to abandon the old domicile and acquire a new one. *Id.* at 64-65.

---

[3] At trial taxpayer testified that the term "domicile" has a somewhat different definition in airline industry jargon. Taxpayer did not, however, argue that the court should apply that definition of "domicile" in the present case.

Taxpayer does not dispute that from January through March of 2004, taxpayer was domiciled in Oregon. Taxpayer argues, in essence, that when he moved from Oregon to Texas in March of 2004 he ceased to be a domiciliary of Oregon and became a domiciliary of Texas; and that when he moved from Texas to Florida in December of 2004 he ceased to be a domiciliary of Texas and became a domiciliary of Florida. Taxpayer does not believe—at this stage in the proceedings, at any rate—that he once again became a domiciliary of Oregon when he left Florida and returned to Oregon in October of 2005 because, taxpayer asserts, his social, financial, and personal affairs were still centered on Florida.

The department, in turn, argues that taxpayer never abandoned his domicile in Oregon, never established a new domicile in either Texas or Florida, and therefore continued to be a resident of Oregon throughout the tax years 2004 and 2005.

This case is before the court on taxpayer's appeal from the decision of the magistrate. Taxpayer is therefore the "party seeking affirmative relief," and bears the burden of proving his allegations by a preponderance of the evidence. ORS 305.427.

Taxpayer's testimony at trial was to the effect that he had numerous reasons for leaving Oregon. These included, among other things, intra-family frictions and what can only be described as a generalized disgust with the idea of continuing to live in Oregon. The court sees no reason to doubt the existence of these factors, but taxpayer's testimony that they led him (a) to resolve to permanently leave Oregon; and (b) to resolve to permanently move either to Texas or to Florida, is not sufficient on its own to carry the burden of proof.

Taxpayer correctly notes that when something as subjective as the presence or absence of a particular intent is at issue, the court cannot simply rely on an individual's own potentially self-serving testimony as to that very same individual's state of mind. Instead, the court must look at the objective circumstances surrounding taxpayer's various moves during the 2004 and 2005 tax years to discern whether taxpayer more likely than not intended to permanently

abandon his domicile in Oregon and establish a new permanent home—either in Texas or in Florida. *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298 (1971.)

The court finds the following facts to be particularly probative of this issue. Taxpayer resided with his spouse and stepson at the house on Ewald Avenue for 12 years, from February of 1992 to March of 2004. In both taxpayer's first domicile questionnaire and taxpayer's second domicile questionnaire, taxpayer identified his desire to become a captain of jet aircraft and his lack of opportunities to accrue required experience as his primary reasons for leaving Oregon in March of 2004.[4] While living in Florida and Texas, taxpayer took jobs that permitted him to attain the necessary experience, but which also, as a practical matter, required him to stay near his workplace. In both of taxpayer's domicile questionnaires, taxpayer stated that this work schedule was the major reason he had not made any visits of any significant length to Oregon in the 2004 and 2005 tax years. In October of 2005, just prior to completing the experience necessary for work as a captain of jet aircraft, he accepted employment with an airline that happened to be based in Oregon. At this same time, taxpayer returned to Oregon and lived in the house on Ewald Avenue with his spouse for roughly six weeks, before departing for Sudan and Afghanistan on EIA business. When taxpayer returned to the United States for health related reasons in June of 2006, he once again stayed with his spouse at the house on Ewald Avenue. Finally, in the end, taxpayer evidently overcame whatever revulsion he may have felt earlier and returned to live in Oregon, where he continued to live at the time of the trial in this case.

The objective circumstances of taxpayer's movements during the tax years 2004 and 2005, and in the years beyond, are consistent with the department's theory that taxpayer moved to Texas, and subsequently to Florida, for the limited purpose of attaining the experience necessary for work as a captain of jet aircraft.

---

[4] In his briefing, taxpayer attempts to disavow statements contained in taxpayer's first and second domicile questionnaires, stating that they "did not accurately reflect [taxpayer's] intention." The court finds it more likely that taxpayer now realizes that he made statements in the domicile questionnaires that are contrary to the legal theory his case is premised upon.

Some of the correspondence submitted into evidence by taxpayer to support his own case further supports the department's argument. For example, in an email from taxpayer to a potential landlord, taxpayer describes himself as "a Learjet pilot in the Tampa Bay area for at least one year," and states that he is "working in Clearwater, [Florida] in order to acquire a specific amount of experience in a particular type of aircraft." The phrasing in this email to the effect that taxpayer was staying in the Tampa Bay area "for at least one year," of course, seems to indicate an openness to staying on longer if the right conditions were to present themselves. However, the above quoted text clearly indicates that taxpayer was in the Tampa Bay area with a specific purpose in mind. There is very little in the record tending to show that taxpayer saw remaining in Florida after accomplishing that goal as anything more than one of several possible alternatives.

Taxpayer has provided the court with an extensive listing of the places taxpayer has lived over the course of his life and of the durations of his stays at each location. Based upon the number and frequency of the moves documented in this listing, and upon taxpayer's testimony at trial, it seems entirely in character for taxpayer to move, first to Texas, and then later to Florida, in the speculative hope of furthering his ambitions of becoming a captain of jet aircraft. However, it would also seem entirely in character for taxpayer to leave unresolved plans regarding what to do and where to go when he accomplished that goal.

In short, taxpayer's continued connections to Oregon, his taking employment with an Oregon based employer upon achieving his goal of becoming a captain of jet aircraft, his stays in Oregon after accepting employment with EIA, and his eventual—and at the time of trial, at least, evidently permanent—return to Oregon weigh heavily in favor of the notion that taxpayer moved to Texas, and subsequently to Florida, for the limited purpose of acquiring the experience necessary to achieve an apparently long held career goal, and with no clear intention of permanently staying in either of those states.

That is not necessarily to say that taxpayer's ultimate plan was to return to Oregon upon achieving that goal, however. That, at any rate, is not entirely clear, though the weight of the evidence before the court goes in that direction. What is clear, however, is that any desire of taxpayer to make either Texas or Florida his permanent home during either the 2004 or 2005 tax years depended on his ability to obtain work as a captain of jet aircraft while living in that state after attaining the experience necessary for that position. That is to say, taxpayer's intentions, such as they were, appear to have been contingent, and a contingent intention to establish a permanent home in another state does not result in abandonment of an individual's current domicile. Taxpayer therefore remained a domiciliary of Oregon during the 2004 and 2005 tax years.

B.  *Applicability of the ORS 316.027(a)(A) "safe harbor"*

As was discussed above, under ORS 316.027(a)(A)(i) to (iii) an individual who is domiciled in Oregon might still qualify for treatment as a nonresident of Oregon if that person (a) maintains no permanent place of abode in this state; (b) does maintain a permanent place of abode elsewhere; and (c) spends in the aggregate not more than 30 days in the taxable year in Oregon. This safe harbor, however, is not available to taxpayer.

First, taxpayer has failed to carry the burden of showing that he did not maintain a "permanent place of abode" in Oregon during the tax years 2004 and 2005. Like "domicile," "permanent place of abode" is not defined in Oregon's tax statutes. The department proffers a reasonable definition in its rules implementing ORS 316.027:

> "'Permanent place of abode' means a dwelling place permanently maintained by the taxpayer, whether or not owned by the taxpayer, and generally includes a dwelling place owned or leased by the taxpayer's spouse. To constitute a permanent place of abode, the taxpayer must maintain a fixed place of abode over a sufficient period of time to create a well-settled physical connection with a given locality."

OAR 150-316.027(1)(b). The difference between a permanent place of abode and a domicile is that whereas everyone

has one—and only one—domicile, an individual can have more than one permanent place of abode or no permanent place of abode at all. *See* OAR 150-316.027(b)(D).

It is clear that from February of 1991 through March of 2004, taxpayer had a permanent place of abode in Oregon—namely, at the house on Ewald Avenue. However, it is not clear on the record before the court whether or not the house on Ewald Avenue ceased to be a permanent place of abode of taxpayer when he moved from Salem, Oregon to El Paso, Texas. Taxpayer testified at trial that he and his spouse had a joint checking account for use in maintaining the house. Taxpayer claims in his briefing that he did not contribute to this account while living in Texas and Florida, but taxpayer did admit to paying the property tax for the house on Ewald Avenue while staying at the house in November of 2005. Finally, while taxpayer testified at trial and in his briefing that he had no legal interest in the house on Ewald Avenue, he nonetheless stated in both taxpayer's first domicile questionnaire and taxpayer's second domicile questionnaire that he owned the house and had acquired his interest over the course of a five year period running from 1991 through 1996. This would seem to indicate that at the time taxpayer prepared his first and second domicile questionnaires, he considered the house on Ewald Avenue to have been continuously "his" while he was living in Texas and Florida. The evidence before the court favors the notion that the house remained a permanent place of abode for taxpayer.

In addition, taxpayer has not carried the burden of proof in showing that he ever established a permanent place of abode in any place other than Oregon. Taxpayer took a considerable step in the direction of establishing a permanent place of abode when he leased an unfurnished apartment upon moving to El Paso, Texas. However, taxpayer's relatively short stay in Texas, coupled with the fact that he continued looking for work in other parts of the county while living in Texas, weighs heavily against the notion that taxpayer's apartment in El Paso amounted to a permanent place of abode.

Taxpayer likewise did not establish a permanent place of abode in Florida. Indeed, by renting rooms in furnished homes taxpayer most likely avoided a good deal of the expense and investment commonly associated with setting up a new permanent dwelling place.

Finally, taxpayer has not shown by a preponderance of the evidence that he spent less than 30 days in Oregon during either the 2004 tax year or the 2005 tax year. It is undisputed that taxpayer spent more than 30 days in Oregon during the 2004 tax year. Taxpayer lived at the house on Ewald Avenue from January through March of 2004.

Likewise, while it is not clear exactly how many days taxpayer spent in Oregon during the 2005 tax year, taxpayer bears the burden of proving that it was less than 30. Here, taxpayer has provided three separate figures for the number of days that he spent in Oregon during the 2005 tax year: 45, 34, and 22. Nothing in the record particularly corroborates any of these figures. The court therefore rules that taxpayer has not shown that he spent less than 30 days in Oregon during the 2005 tax year. Taxpayer therefore does not meet any of the requirements of ORS 316.027(a)(A)(i) to (iii).

## V.   CONCLUSION

A preponderance of the evidence presented at trial indicates that taxpayer did not intend to permanently abandon his domicile in Oregon either when he first moved to Texas, or subsequently when he moved to Florida.

Moreover, regardless other factors that may have led taxpayer to move from Oregon to Texas in March of 2004, taxpayer's primary motivation for doing so was to further his goal of becoming a captain of jet aircraft. Taxpayer's intentions, if any, of establishing a permanent home in either Texas or Florida during the 2004 and 2005 tax years were contingent on taxpayer's ability to secure employment as a captain of jet aircraft in either of those states after achieving his goal. Taxpayer therefore never established a domicile in either Texas or Florida.

Finally, taxpayer's circumstances during the 2004 and 2005 tax years do not qualify him for the "safe harbor" provided by ORS 316.027(a)(A)(i) to (iii). Now, therefore,

IT IS THE DECISION OF THIS COURT that taxpayer was a full-year resident of the state of Oregon during the tax years 2004 and 2005.