IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

CURTIS WAITE and LISA WAITE,      )
                                       )
           Plaintiffs,              )     TC-MD 150362N
                                         )
      v.                       )
                                       )
DEPARTMENT OF REVENUE,        )
State of Oregon,                  )
                                       )
           Defendant.          )     **ORDER**

Plaintiffs filed their Complaint on June 26, 2015, challenging Defendant's Notices of Determination and Assessment for the 2010, 2011, and 2012 tax years. Plaintiffs maintain that they were not Oregon residents for any of those tax years. (*See* Ptfs' Compl at 1.) Defendant maintains that Plaintiffs "are both domiciled residents of the State of Oregon and were required to file resident income tax [returns]" for the tax years at issue. (Def's Ans at 1.) Defendant filed a proposed Stipulated Agreement on August 18, 2015, offering to "abate its entire 2012 Income Tax Assessment dated 04/01/2015 and there will be no tax penalty or interest from that specific tax notice due for tax year 2012[.]"[1] Because Defendant has agreed to provide Plaintiffs with their requested relief for the 2012 tax year, that tax year is not before the court.

Defendant sent Plaintiffs its "first request for documents" on July 15, 2015, prior to the case management conference held July 29, 2015. During the case management conference, Plaintiffs objected to Defendant's document requests as overly broad. On August 3, 2015, Defendant filed a "Statement of Intent" and a Motion to Compel Discovery. In its Statement of Intent, Defendant wrote that there were no material facts in dispute on the legal issue of whether

---

[1] Defendant also proposed to abate the penalties and interest imposed for the 2010 and 2011 tax years. During the case management conference held September 2, 2015, Plaintiffs' authorized representative stated that Plaintiffs do not agree to the amounts of tax calculated by Defendant for the 2010 and 2011 tax years.

"the Servicemembers Civil Relief [Act] (SCRA) * * * precludes a servicemember from establishing a domicile for income tax purposes in Oregon while on active duty here in Oregon." Defendant further wrote that it intended to file a "Motion for Partial Summary Judgment" on that issue. Plaintiffs filed their Response on August 14, 2015, again objecting to several of Defendant's document requests as overly broad. Plaintiffs agreed to respond to document requests 1, 7, 14, 15, 16, 17, 21, 22, and 23. (Ptfs' Resp at 2.)

In an Order issued August 19, 2015, the court denied Defendant's Motion to Compel Discovery as premature under the Magistrate Division rules and in conflict with Defendant's statement that no material facts were in dispute for purposes of the issue before the court. The court scheduled a second case management conference for September 2, 2015, to discuss Defendant's Statement of Intent and proposed Stipulated Agreement. During the case management conference, the parties agreed to a briefing schedule.

Defendant filed its Motion for Partial Summary Judgment (Motion) on August 20, 2015. The parties filed Stipulated Facts on September 1, 2015. Plaintiffs filed a partial response to Defendant's discovery requests on September 3, 2015. Plaintiffs filed an Objection to Partial Summary Judgment (Response) on September 23, 2015. Defendant filed a Reply to Response (Reply) on October 2, 2015. Defendant's Motion is now ready for the court's determination.

A.    *Statement of Facts*

In its filings with the court, Defendant identified the following undisputed facts: "Defendant does not dispute the fact that Plaintiff was an Active Duty Servicemember during the years at issue, 2010 through 2012." (Def's Mot to Compel Discovery at 1, Aug 17, 2015.) Based on the documents provided by Plaintiffs in partial response to Defendant's document requests, Defendant agrees that Colonel Waite maintained an Alaska driver's license and voter

registration continuously since 1997. (Def's Acknowledgement of Service, at 3.)

The parties filed the following Stipulated Facts:

- "Col. Curtis Waite served eight years on Title 10 active duty status with the U.S. Air Force where he served in Utah and Alaska[.]"

- "Col. Curtis Waite's initial active duty tour at Kingsley Field was for 1826 days [5 years][.]"

- "Col. Curtis Waite had successive active duty tours at Kingsley Field until his fall 20123 retirement from the U.S. military[.]"

- "Col. Curtis Waite continues to live in Oregon after his military retirement[.]"

- "Col. Curtis Waite has filed annual extensions with the Department of the Air Force since retiring, to retain his travel and transportation entitlements regarding the movement from Oregon of his personal property and household goods[.]"

- "The 'two digit postal abbreviation for the state the member elected' on box#44 of DFAS Form 702 is 'AK' [Alaska][.]"

- "The 'Address on Record' on box# 52 of DFAS Form 702 is '97603' * * * [.]"

- "Col. Curtis Waite initially acquired his Oregon Driver's License on 08/19/2013."

Plaintiffs' partial response to Defendant's document requests provided the following facts: On their 2010 and 2011 federal income tax returns, Plaintiffs provided a home address in Klamath Falls, Oregon. (Discovery Request 1 at 1, 51.) Colonel Waite's military orders dated August 24, 2011, identify his duty as "Active Guard Reserve Continuation Tour (Title 32)." (Discovery Request 21, 23 at 1.) The "Itinerary" for October 1, 2011, to June 30, 2013, lists addresses in Klamath Falls, Oregon, including Plaintiffs' home address. (*Id.*) Colonel Waite's U.S. Air Force occupation was identified as "Colonel" from April 2010 to July 2012." (*Id.* at 5.)

B.    *Issue*

Defendant moves this court for partial summary judgment that section 571 of the SCRA does "not pre-empt Oregon law governing state income taxation of servicemembers domiciled in

the state while being stationed here on military assignment, and that a servicemember may become domiciled in Oregon under ORS 316.027 based on the member's objective intent." (Def's Mot at 1.) It is unclear if Plaintiffs assert that the SCRA preempts Oregon domicile law; Plaintiffs did not use the term "preempt" in their response to Defendant's Motion. Plaintiffs argue that the SCRA "modifies domicile analysis for servicemembers and their spouses for purposes of taxation, to differ from non-military persons." (Ptfs' Resp at 2.)

The court will address the following issues for the 2010 and 2011 tax years: (1) whether the SCRA preempts Oregon domicile law for state income tax purposes, or otherwise prevents an active duty servicemember stationed in Oregon from acquiring an Oregon domicile; and (2) whether, as Plaintiffs contend, the SCRA modifies the Oregon domicile analysis for state income tax purposes as applied to active duty servicemembers stationed in Oregon.

C.      *Analysis*

1.      *Relevant provisions of the SCRA*

"The SCRA was originally enacted in October 1940 as the Soldiers and Sailors Civil Relief Act (SSCRA) * * *." *Palandech v. Dept. of Rev.*, TC-MD 100015C, WL 1045641 at *3 (Mar 23, 2011). In 2003, the SSCRA was amended and recodified as the SCRA. Pub L 108-189, 117 Stat 2835 (2003). In 2009, the SCRA was amended by the Military Spouses Residency Relief Act (MSRRA), the purpose of which was to "amend the [SCRA] to guarantee the equity of spouses of military personnel with regard to matters of residency, and for other purposes." Pub L 111-97, 123 Stat 3007 (2009).

The stated purposes of the SCRA are

"(1) to provide for, strengthen, and expedite the national defense through protection extended by this Act to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and

"(2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service."

50 App USCA § 502.[2] The SCRA "applies to any judicial or administrative proceeding commenced in any court or agency in any jurisdiction subject to this Act," but not to "criminal proceedings." § 512(b). The jurisdiction of the SCRA includes "each of the States, including the political subdivisions thereof[.]" § 512(a). The United States Supreme Court stated that the SCRA "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 US 561, 575, 63 S Ct 1223, 87 L Ed 1587 (1943).

Section 571 of the SCRA states in pertinent part,

"(a) Residence or domicile.

"(1) In general. A servicemember shall neither lose nor acquire a residence or domicile for purposes of taxation with respect to the person, personal property, or income of the servicemember by reason of being absent or present in any tax jurisdiction of the United States solely in compliance with military orders.

"(2) Spouses. A spouse of a servicemember shall neither lose nor acquire a residence or domicile for purposes of taxation with respect to the person, personal property, or income of the spouse by reason of being absent or present in any tax jurisdiction of the United States solely to be with the servicemember in compliance with the servicemember's military orders if the residence or domicile, as the case may be, is the same for the servicemember and the spouse.

"(b) Military service compensation. Compensation of a servicemember for military service shall not be deemed to be income for services performed or from sources within a tax jurisdiction of the United States if the servicemember is not a resident or domiciliary of the jurisdiction in which the servicemember is serving in compliance with military orders.

"(c) Income of a military spouse. Income for services performed by the spouse of a servicemember shall not be deemed to be income for services performed or

---

[2] Unless otherwise noted, the court's references to the United States Code Annotated (USCA) are to 2009.

from sources within a tax jurisdiction of the United States if the spouse is not a resident or domiciliary of the jurisdiction in which the income is earned because the spouse is in the jurisdiction solely to be with the servicemember serving in compliance with military orders."

2.      *Whether the SCRA preempts Oregon domicile law for state income tax purposes, or otherwise prevents an active duty servicemember stationed in Oregon from acquiring an Oregon domicile*

"The power of Congress to preempt state law arises from the Supremacy Clause of Article VI of the United States Constitution, which provides that the laws of the United States are 'the supreme law of the land,' and that the state courts 'shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding.' " *Willis v. Winters*, 350 Or 299, 307-308, 253 P3d 1058 (2011). State law may be preempted by federal law in three circumstances:

"(1) when the federal law expressly provides for preemption; (2) when a congressional statutory scheme so completely occupies the field with respect to some subject matter that an intent to exclude the states from legislating in that subject area is implied; and (3) when an intent to preempt is implied from an actual conflict between state and federal law."

*Id.*, citing *Crosby v. National Foreign Trade Council,* 530 US 363, 372, 120 S Ct 2288, 147 L Ed 2d 352 (2000). "[P]reemption is 'strong medicine,' which should 'not be lightly presumed.' * * * Whenever possible, a federal law and a state system of regulation should be read in tandem, so as to avoid finding the latter preempted. This is particularly true when the state law or regulation at issue touches upon traditional areas of state sovereignty, such as taxation." *U.S. v. Minnesota*, 97 F Supp 2d 973, 977 (D Minn 2000) (citations omitted).

The court finds no express preemption of state domicile law in the SCRA. The states each have their own laws defining domicile and residence, and the court finds no basis to conclude that the federal statutory scheme "completely occupies" the field of domicile law. *See Restatement (Second) of Conflict of Law* § 11, comment n (1971) (discussing the law of

"domicile" and noting that states may "have different rules on the subject of [domicile]"). Thus, the court's focus is on the third circumstance: whether intent to preempt is implied from an actual conflict between state and federal law. "The third type of preemption exists not only when it is physically impossible to comply with both the state and federal law, but when 'under the circumstances of the particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Willis*, 350 Or at 308, citing *Hines v. Davidowitz,* 312 US 52, 67-68, 61 S Ct 399, 85 L Ed 581 (1941).

a. SCRA preemption determination in *U.S. v. Minnesota*

The federal district court in Minnesota considered whether the SSCRA preempted certain "[r]egulations and presumptions developed by the [Minnesota Department of Revenue]" used to determine domicile for state income tax purposes, as applied to Public Health Service officers stationed in Minnesota. *U.S. v. Minnesota*, 97 F Supp at 974-75. The court held that the SSCRA preempted a Minnesota regulation establishing a "presumption * * * that the domicile of one spouse is presumably the same as that of the other absent evidence to the contrary" .[3] *Id.* at 975, 982. The court reasoned that the marital presumption undermined the objective of the SSCRA because it would effectively allow the state to tax servicemembers based on their physical presence in the state. *Id.* at 983. The court found that for servicemembers "[t]he marital presumption, used by itself, has absolutely nothing to do with any explicit actions of a serviceperson which could be interpreted as indicating an intent to remain in a given state following his posting." *Id.* at 982.

With respect to the other factors relevant to a domicile determination under Minnesota regulations, the district court stated that "the factors listed * * * are merely that—*factors,*

---

[3] This case was decided prior to the MSRRA amendment to the SCRA in 2009.

incidents the [Department of Revenue] may examine to assist in a determination of domicile."
97 F Supp 2d at 984 (emphasis in original). "The concerns here of any one factor at issue here
upsetting the system established by the SSCRA are thus much weaker than the problems
presented by the marital presumption." *Id.* In the court's view, "the SSCRA does not *insure* that
a serviceperson's domicile will not change during his tenure." The SSCRA provides that
servicemembers shall not acquire a new domicile "solely" because of their presence in that state.
*Id.* The court found that the word "solely" means "exclusively." *Id.* "A plain reading of the text
of the SSCRA thus leads to the conclusion that a state may tax a serviceperson as long as other
factors exist, in addition to physical presence in the state, which lead[] to the conclusion that a
serviceperson has affirmatively chosen the state of posting as his home." *Id.* The court added a
final "cautionary note": "Although use of these action-specific factors is not preempted by the
SSCRA categorically, as a matter of law, applying these factors in a manner which does not truly
pay heed to a particular serviceperson's intention to remain in Minnesota following the
conclusion of his service could *easily* render the factors preempted as applied." *Id.* at 985.

           b.     SCRA preemption of Oregon domicile law

With that background in mind, the court now considers Oregon's domicile law for state
income tax purposes to determine if it conflicts with the SCRA. ORS 316.037(1)(a) imposes a
tax "on the entire taxable income of every resident of this state."[4] "Resident" is defined to
include "[a]n individual who is domiciled in this state * * *" subject to certain exceptions. ORS
316.027(1)(a)(A).[5]

---

[4] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) are to 2009.

[5] ORS 316.027(1)(a)(B) defines "resident" to include "[a]n individual who is not domiciled in this state but
maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable
year in this state unless the individual proves that the individual is in the state only for a temporary or transitory
purpose." Defendant has not asserted ORS 316.027(1)(a)(B) as authority for taxing Plaintiffs' 2010 and 2011
income, so the court will not address whether the SCRA preempts application of ORS 316.027(1)(a)(B) to active

> "The term 'domicile' is not defined in Oregon's tax statutes. However, the term is commonly defined as: 'The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere.' "

*Gorski v. Dept. of Rev.*, 20 OTR 452, 460 (2012), citing *Black's Law Dictionary* 523 (8th ed 2004). "Every person has at all times one [domicile], and no person has more than one [domicile] at a time." *Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945) (citation omitted). "In order to change domicile, an individual must not only establish a residence in the new place but have an intention to abandon the old domicile and acquire a new one." *Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). "The intent to change domicile or to acquire a new domicile must be a present intent and not conditioned upon some future event or contingent event." *Id.* (citation omitted).

> "The law of domicile is well established but the application of its rules is difficult in many instances because of the requirement that the *intent* of an individual who is capable of acquiring a 'domicile of choice' must be definitely ascertained. * * * Self-serving statements are therefore suspect and the triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent."

*Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298-99 (1971) (citation omitted) (emphasis in original).

Thus, the Oregon law of domicile for state income tax purposes turns on the individual's intent. When this court has determined an individual's domicile, it has considered numerous factors as evidence of intent. *See, e.g., Palandech*, 2011 WL 1045641 at *7, citing OAR 150-316.027(1)(1)(a) ("[f]actors contributing to a determination of domicile 'include family, business activities[,] and social connections' "). However, no one factor is determinative or creates a presumption of domicile. The court is persuaded that, as in *U.S. v. Minnesota*, the Oregon domicile law for state income tax purposes does not present a direct conflict with the SCRA and

---

duty servicemembers stationed in Oregon.

is not, therefore, preempted by the SCRA. That is not to say that the SCRA has *no* impact on the application of Oregon domicile law to active duty servicemembers stationed in Oregon. As discussed below, the factors typically indicative of an individual's chosen domicile must be considered in light of section 571 of the SCRA.

3.     *Whether the SCRA modifies the Oregon domicile for state income tax purposes analysis as applied to active duty servicemembers stationed in Oregon*

Plaintiffs argue that "[a]llowing [Defendant] to establish domicile based on the same factors, whether an individual is military or non-military, would mean that servicemembers are not treated any differently than any other person. The SCRA domicile provisions exist so that they should be treated differently." (Ptfs' Resp at 5.) In Plaintiffs' view, "[e]ven if a factors base[d] domicile is used, as [Defendant] desires to do in this case, the language of the SCRA exempts [] *absence* from Alaska and *presence* in Oregon from the analysis. The exemption should include any activity that is inherent to being *absent* from Alaska and *present* in Oregon, including but not limited to: owning a residence, obtaining a driver's license, location of a motor vehicle," and other activities incident to Plaintiffs' physical presence in the state. (*Id.* at 3) (emphasis in original).

Defendant disagrees with Plaintiffs that the SCRA "has modified domicile analysis for servicemembers." (Def's Reply at 1.) Defendant "admits that [it] use[s] the same domicile factors * * * to review the residency status of any individual for the purposes of either filing enforcement or audit." (*Id.* at 5.) However, Defendant's opinion is that an individual may be stationed in Oregon "against their will for a single duty tour which normally lasts four years" and will only use the multifactor domicile analysis when "a servicemember has continuous tours of duty with Oregon that cover an extensive time period * * *." (*Id.*)

/ / /

Intent is the key to determining an individual's domicile under Oregon law for state income tax purposes. The difficulty in determining the intent of an active duty servicemember stationed in Oregon under military orders is that the servicemember may not have freely chosen to reside in Oregon.[6] Section 571 of the SCRA recognizes that difficulty and protects a servicemember from acquiring a domicile for taxation purposes due to the servicemember's presence in a tax jurisdiction, assuming the servicemember's presence is solely in compliance with military orders. Similarly, section 571 of the SCRA protects a servicemember from losing a domicile for taxation purposes due to the servicemember's absence from that tax jurisdiction solely in compliance with military orders. The United States Supreme Court explained that, under the SSCRA, "the taxable domicile of servicemen shall not be changed by military assignments." *Dameron v. Brodhead*, 345 US 322, 325, 73 S Ct 721, 97 L Ed 1042 (1953); *see also Kamikido v. Comm'r*, 39 TCM (CCH) 261 (1979) ("[A]s a general rule, a soldier's domicile remains unchanged when military service takes him away from such domicile."). Moreover, the SCRA "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone*, 319 US at 575.

There is no dispute in this case that Colonel Waite was an active duty servicemember within the meaning of the SCRA during the 2010 and 2011 tax years, or that he was present in Oregon in compliance with military orders. (*See* Stip Facts at 1.) In order to give effect to the SCRA, the usual factors considered relevant in an Oregon domicile case must be viewed in light of the fact that Plaintiffs were present in Oregon in 2010 and 2011 in compliance with Colonel Waite's military orders. Whether that was the *sole* reason Plaintiffs were in Oregon is a fact to

---

[6] "There is, however, a further limitation upon the power of a person to acquire a [domicile] of choice which applies in the case of persons in the armed forces of the United States. To acquire a [domicile] of choice, one must have legal capacity so to do. Conversely, a person cannot acquire a [domicile] of choice by any act done under legal or physical compulsion." *Zimmerman*, 175 Or at 593 (citation omitted).

be determined based on trial testimony and evidence. In considering Plaintiffs' domicile, the court will place more weight on Plaintiffs' voluntary connections to Oregon and Alaska, and less weight on Plaintiffs' connections that are incidental to being present or absent in compliance with military orders. For example, if Plaintiffs received mail at their Oregon address or sought medical and dental care from Oregon providers, those connections to Oregon may be given less weight because they are incidental to being present in Oregon in compliance with military orders. By contrast, if Plaintiffs voluntarily declared that they were Oregon residents for purposes of obtaining a hunting license or registered to vote in Oregon, those connections to Oregon may support a finding that Plaintiffs intended to establish an Oregon domicile.

D. *Discovery*

The parties continue to dispute the scope of relevant discovery in this case. Generally, "parties may inquire regarding any matter, not privileged, which is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any other party * * *." Tax Court Rule (TCR) 36 B(1). "It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Upon a properly filed motion and "for good cause shown," the court may limit discovery to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense * * *." TCR 36 C.

In its Motion to Compel Discovery, Defendant made 23 requests for documents from Plaintiffs. (Def's Mot to Compel at 6-8.) To date, Plaintiffs have provided or agreed to provide documents in response to nine of those requests. Plaintiffs objected to the remaining requests as "irrelevant to determining intent in military domicile cases." (Ptfs' Resp at 6.) In this Order, the court explained the applicability in this case of both the SCRA and Oregon domicile law for state

income tax purposes. In light of this Order, the parties are directed to confer regarding Defendant's remaining document requests.

The court hereby grants Defendant's motion for discovery pursuant to Tax Court Rule-Magistrate Division (TCR-MD) 9 B. The court does not order production of any specific documents at this time. To the extent that the parties are unable to agree whether a specific document request is relevant in this case, a party may file a motion to compel production stating "with sufficient particularity the items it seeks to discovery, the reasons for the request, and its prior attempt(s) to obtain the requested items." TCR-MD 9 C. From the date that a party files a motion to compel, the opposing party has 10 days to file a written response explaining its objections. *See* TCR-MD 7 D(1).

E.      *Conclusion*

After careful consideration, the court grants Defendant's Motion for Partial Summary Judgment; the court finds that SCRA does not preempt Oregon domicile law for state income tax purposes. However, the SCRA is applicable in this case and must be considered when weighing the evidence of Plaintiffs' domicile. Defendant's motion for discovery is granted pursuant to TCR-MD 9 B. The court does not order production of any specific documents at this time. To the extent that the parties are unable to agree whether a specific document request is relevant in this case, a party may file a motion to compel production in accordance with TCR-MD 9 C. Any response from the opposing party must be filed within 10 days in accordance with TCR-MD 7 D(1). The court will schedule trial in this matter on the question of Plaintiffs' domicile for the 2010 and 2011 tax years. Within 30 days of the date of this Order, Plaintiffs must provide the court with three mutually convenient trial dates or the court will set this matter for trial at its convenience. Now, therefore,

IT IS ORDERED that Defendant's Motion for Partial Summary Judgment is granted. The SCRA does not preempt Oregon domicile law for state income tax purposes. However, the SCRA is applicable in this case and must be considered when weighing the evidence of Plaintiffs' domicile.

IT IS FURTHER ORDERED that Defendant's motion for discovery is granted pursuant to TCR-MD 9 B. To the extent that the parties are unable to agree whether a specific document request is relevant in this case, a party may file a motion to compel production in accordance with TCR-MD 9 C. Any response from the opposing party must be filed within 10 days in accordance with TCR-MD 7 D(1).

IT IS FURTHER ORDERED that, within 30 days of the date of this Order, Plaintiffs must provide the court with three mutually convenient trial dates or the court will set this matter for trial at its convenience.

Dated this ____ day of December 2015.

_____
ALLISON R. BOOMER
MAGISTRATE

*This interim order may not be appealed. Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved. ORS 305.501.*

*This document was filed on December 15, 2015.*