IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| GEORGIA L. NELSON, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130366C |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on January 14, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff has appealed Defendant's notices of determination and assessment for 2007, 2008, 2009, and 2010. Plaintiff seeks relief from those assessments, arguing that she was not domiciled in Oregon for any of the years at issue and is therefore not subject to tax by this state. (Ptf's Compl at 1.) The total amount owing at the time Defendant issued its assessments on February 25, 2013, was $55,448.13. (*Id*. at 4-7.)

Trial in the matter was held by telephone November 6, 2013. Plaintiff Georgia L. Nelson (Georgia)[1] appeared on her own behalf. Defendant was represented by John Koehnke (Koehnke), tax auditor, Oregon Department of Revenue. Plaintiff's Exhibits 1-1, 6, 7-1 through 7-8, 8, 10-1 through 10-10, and 12-1, were admitted at trial without objection. Defendant's

/ / /

---

[1] When referring to a party in a written objection, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Nelson. To avoid confusion, the court will use the first name of the individual being referenced.

Exhibits A-1 through A-9, C-19, E-1, 2, 4, 6, 10 through 12, and F-11, 12, and 16, were admitted at trial without objection.

## I. STATEMENT OF FACTS

Georgia testified that she was born in Caldwell, Idaho; that she was raised in Idaho, attended school in Idaho, and that all of her close family members live in that state. Georgia owns a home in Idaho, a fact explained in more detail below.

Georgia further testified that she moved to Oregon in 1977 when she married her husband Stanley Nelson (Stanley).[2] According to the marriage certificate, Georgia and Stanley were married in Nevada in 1975. (Def's Ex E at 1.)

Georgia testified that after she and Stanley were married, they moved into a manufactured home that Stanley had purchased in 1975. That home was located in a 20 acre parcel of land owned by Stanley's father. Approximately 24 years later, sometime in 1999 or thereabouts, Georgia and Stanley jointly purchased a 40 acre parcel of land in Adrian, Oregon¸ a small town approximately 3 miles west of the Idaho border. As the court understands it, Georgia and Stanley moved the manufactured home to the jointly owned 40 acre Oregon property after their purchase of the land in 1999. Georgia testified that Stanley's desire was to buy the 40 acre parcel in Oregon by himself, but did not have sufficient funds to do so, so Georgia "loaned" him approximately $15,000 to buy that property. Georgia did acknowledge that her name is on the title to the 40 acre Oregon parcel. Georgia testified that she had her name placed on the title to the 40 acre Oregon parcel because she did not want to lose her "investment" in that property

/ / /

---

[2] Georgia testified that she married Stanley and moved to Oregon in 1977 after the two were married. The copy of the marriage certificate submitted into evidence by Defendant shows that Stanley and Georgia were married September 18, 1975, in Winnemucca, Nevada. (Def's Ex E at 1.) It is possible that Georgia had the dates confused; that she actually moved to Oregon in 1975, not 1977. It is also possible that Georgia moved to Oregon after her marriage to Stanley in Nevada. However, that fact is not critical to the court's decision in this case.

(meaning the $15,000 loan to Stanley). The manufactured home is legally owned by Stanley; Georgia has no ownership interest in that home.

Georgia was living in Oregon when her children were born. Georgia testified that her children were born in a hospital in Idaho because that was the nearest medical facility. Georgia and Stanley raised their children in Oregon.

Georgia has never worked in Oregon. Georgia began working in a nursing home in Caldwell, Idaho, in 1980, five years after she and Stanley were married. Georgia was living in Oregon at the time. Georgia commuted from her home in Oregon to her job at the nursing home in Idaho. Georgia testified that she worked in Idaho during the years in question (2007 through 2010), and further, that she has worked in Idaho for approximately 30 years and that Idaho is the only state in which she has ever worked. Defendant does not challenge that claim, and there is no evidence to suggest otherwise. According to Georgia's testimony, Stanley worked "the past five years" at the same nursing home where she was employed. Before that, he worked as a mechanic for his father who owned a trucking company in Idaho. Stanley would work on the trucks at his home in Adrian, Oregon.

Georgia's nursing license is issued by the State of Idaho. (Def's Ex A at 2.) However, the address on Georgia's current nursing license is 825 Coyote Gulch Rd., Adrian, Oregon. (*Id.*) There is no evidence, testimonial or otherwise, indicating that Georgia's nursing license ever reflected an Idaho address. The Oregon address is where the manufactured home is located on Georgia and Stanley's jointly owned 40 acres.

Georgia and Stanley jointly own a home in Homedale, Idaho, which they purchased in early 2002. Georgia testified that she moved into that home later that year after the home was remodeled. The Idaho home was a "family" home, originally owned by Georgia's former

mother-in-law, who died in 1996. Georgia testified that her former mother-in-law willed the house and 40 acres of land to Georgia and her two oldest daughters upon her death. Georgia testified that her daughter Penny originally moved into the Idaho home on or about 1997 after buying out the interests that Georgia and her other daughter had in that home. Penny subsequently got divorced and could no longer afford the mortgage payments on that home and land. According to Georgia's testimony, the home went into foreclosure sometime around 1999 or early 2000 and after sitting empty for "a while," Georgia bought the home jointly with Stanley, making the offer in late 2001 and closing on the loan for the home in early 2002.

Georgia testified that she never liked the home in Oregon where she lived with Stanley and where her children were born and raised. Georgia testified that the property where the home is located is mostly sagebrush and that there were many rattlesnakes on the property. Georgia further testified that Stanley wanted to own the home because it had been in his family for many years and that he liked the ambience and wilderness setting, where he could sit and enjoy the deer and coyotes. Georgia further testified that the manufactured home in Oregon where she and Stanley lived for many years after the two were married was poorly maintained and, in her words, "run down." Georgia explained that Stanley does not like to fix things up and that, in her opinion, the home is not worth spending the money necessary to have it repaired. Georgia further testified that she did not like anything about the Oregon property except for the seclusion, a feature she enjoyed when her children were young and growing up on the property. According to her testimony, Georgia felt that the seclusion was good for her children because it "kept them out of trouble."

Georgia particularly disliked the location of the Oregon home because it is on a poorly maintained dirt road and sits atop a hill. Due to the home's hilltop location, Georgia testified

that she often could not drive up to the house in the winter because of the snow or mud, and had to park at the base of the hill and walk about 150 yards up the hill, often carrying groceries and small children, at times on dark and cold rainy nights.

Georgia testified that both she and Stanley lived in the Idaho home at least part of the time. Georgia testified that Stanley spends approximately 40 percent of his time living at the Oregon property and 60 percent of his time with her in Idaho, although the two are not intimate and she considers herself to have separated from Stanley in 2002. Georgia testified that she rarely goes to the Oregon property and never spends the night there. Georgia testified that Stanley spends much of his time in the Idaho home both because he has been diagnosed with cancer and he enjoys the comfort of being around his wife, the Plaintiff in this matter. Georgia testified that she and Stanley have "an unusual relationship."

Adrian, Oregon, is a small town several miles west of the Idaho border. Homedale, Idaho, is several miles east of the Idaho border. The two homes are apparently roughly seven miles apart. Finally, Caldwell, Idaho, which is where Georgia has worked since 1980, is several miles east of Homedale, Idaho. Georgia testified that the distance from Homedale to Caldwell is approximately 14 miles.

Georgia has an Oregon driver license which, according to the uncontroverted testimony, she renewed in 2008, six years after Georgia allegedly moved to Idaho.

Georgia has at least one vehicle registered in her name in Oregon and no vehicles registered in Idaho.

Georgia has an Oregon voter registration card, which she renewed in 2000. (Def's Ex E at 6.) Georgia last voted in Oregon November 4, 2008. (*Id*.) Georgia initially testified she did not vote in Oregon, but Defendant provided official voter information showing Georgia did,

indeed, vote in Oregon in 2008, and twice renewed her Oregon voter registration between 2000 and 2010. Georgia then testified that she had apparently voted in Oregon in 2008, but that she could not remember the circumstances of that vote, and speculated that she had likely voted by mail. Georgia insists she "moved" to Idaho in 2002. (*Id.*)

The majority of Georgia's mail is delivered to her Oregon address in Adrian, where the manufactured home is located and where Georgia lived before purchasing the home in Idaho. Among the mail delivered to the Adrian, Oregon, address are the utility bills for the Idaho property.

## II. ISSUE

The issue in this case is whether Georgia was an Oregon domiciliary for the tax years at issue.

## III. ANALYSIS

ORS 316.027 defines "resident" as:

"(1) For purposes of this chapter, unless the context requires otherwise:

"(a) '*Resident*' or 'resident of this state' means:

"(A) An individual who is *domiciled* in this state unless the individual:

"(i) Maintains no permanent place of abode of this state;

"(ii) Does maintain a permanent place of abode elsewhere; and

"(iii) Spends in the aggregate not more than 30 days in the taxable year in this state[.]"

ORS 316.027 (emphasis added.)[3]

Residency is thus statutorily equated with domicile.

---

[3] Unless otherwise noted, the court's references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2011.

Domicile is a common law concept comprised of two components: "(1) a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228, 1231 (1992) (citing *Elwert v. Elwert*, 196 Or 256, 265, 248 P2d 847 (1952)). That determination, although based on intent, must be established by all the facts and circumstances. *dela Rosa*, 313 Or at 289-90.

Oregon Administrative Rule (OAR) 150-316.027(1)(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence." Although an individual can have more than one residence, he "can have but one domicile[.]" *dela Rosa*, 313 Or at 289 (internal quotation marks omitted); *see also Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945); OAR 150-316.027(1)(1)(a).

"The law is also clear that once domicile is established or determined to be in a particular location, it remains there until the person establishes a new domicile." *Duncan v. Dept. of Rev.*, No 4315, WL 792454 at *1 (Nov 3, 1998).

To effect a change of domicile, "three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." *White v. Dept. of Rev.* (*White*), 14 OTR 319, 321 (1998). Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." *Hudspeth v. Dept. of Revenue*, 4 OTR 296, 298-99 (1971). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual[.]" *Butler v. Dept. of Rev.*, TC-MD No 050801D, WL 2041284 at * 4 (July 18, 2006). Factors

contributing to a determination of domicile "include family, business activities[,] and social connections." OAR 150-316.027(1)(1)(a).

Georgia contends that she abandoned her Oregon domicile in 2002, which is when she moved into her Idaho home. Defendant contends that Georgia was domiciled in Oregon for the years at issue and is therefore subject to Oregon income tax. Defendant argues that the only real change in Georgia's life since sometime in 2001 was Georgia's joint purchase of a home in Idaho with Stanley. Defendant insists Georgia never abandoned her Oregon domicile, which is one of the three elements necessary to establish a change in domicile.

Georgia had some good explanations for all the changes she made in her life in her attempt to demonstrate that she had, in fact, abandoned her Oregon domicile and acquired a new domicile in Idaho. For example, Georgia worked her entire 30-plus year nursing career in Idaho, and had a nursing license issued by that state. However, Georgia began working in Idaho five years after she was married in 1975. She continued to live in Oregon, and work in Idaho, until at least 2002, when Georgia contends she moved permanently to Idaho. Georgia bought a home in Idaho, which is often an indication of residency and domicile, but she purchased the home jointly with Stanley, and her name is on the title to the 40 acre parcel of land in Oregon where the couple lived for many years. Thus, "home" ownership, or residence, is not pivotal here and Georgia owns property in both Idaho and Oregon. Moreover, Georgia's Idaho nursing license lists Adrian, Oregon, as her address.

Other factors weighing against Georgia's contention that she was an Idaho domiciliary, having abandoned her Oregon domicile, are the facts that she registered vehicles in Oregon, had an Oregon voter registration card that she renewed after allegedly moving to Idaho, and voted in an Oregon election six years after she claims to have moved to Idaho. Georgia also received the

majority of her mail at her Oregon address. There is no evidence that Georgia ever submitted a change of address to the U.S. Postal Service to have her mail redirected to the home she and Stanley purchased in Idaho in 2002. Georgia testified that one of the reasons she moved to Idaho was to cut down on her commute to work, but the evidence indicates that commute was reduced by only six or seven miles.

The difficulty with this case is similar to that which lies at the heart of many of the cases concerning domicile. Although the goal of the court is to discern the intent of the taxpayer, the court must make that determination based on objective facts. In the court's experience, people generally do not order their lives with tax consequences in mind, and facts often present, at best, a muted picture. In this case, the court is persuaded that Georgia did not like the Oregon property and preferred living in the home she and Stanley purchased in Idaho. However, the fact that Georgia retained and, in fact, renewed, many of her official ties with the State of Oregon (driver license and vehicle and voter registrations) undercuts Georgia's claim that she abandoned Oregon as her state of domicile and acquired an Idaho domicile.

In the court's view, it does not appear that Georgia actually knows where she considered her home to be for the years in question. However, the objective facts strongly suggest Georgia remained an Oregonian. Had Georgia truly considered Idaho to be her home, she certainly could have taken many of the steps one ordinarily takes to accomplish that change. She could have obtained an Idaho driver license, registered to vote in Idaho, had her mail delivered to Idaho, and changed her vehicle registration to Idaho.

One of the reasons for the judicially created three-part residency test is that a person does not themselves always know where they consider their home to be, home being at the root of the whole issue of domicile. *Dept. of Rev. v. Glass*, 15 OTR 117, 119 (2000) . However, because

the court cannot look into a person's mind, and the person themselves may have split loyalties or a degree of uncertainty as to where they truly consider their "home" to be, objective factors have been considered to help the court determine where a person's domicile lies, which, in turn, determines whether the person can be subjected to the state's income tax system.

As Defendant noted in its closing, there is really only one change that occurred between the time that Georgia moved to Oregon in the mid-1970s and the tax years at issue (2007 through 2010). That change was the joint purchase by Georgia and Stanley of a home in Homedale, Idaho.

Georgia gave some very persuasive, or at least plausible, explanations as to the nature of her relationship with Stanley, testifying that they are not intimate and that, although Stanley does occupy one of the two bedrooms in the Idaho home – the master bedroom and bathroom – and spends approximately two thirds of his time living there, Georgia and Stanley lived separate lives and Georgia does not share her money with Stanley. Georgia explained that she purchased the Idaho home jointly with Stanley because the incomes of both Georgia and Stanley were needed in order to qualify for the loan to purchase that home. Georgia explained that her arrangement with Stanley was that, in return for his willingness to "participate" in the financing of the Idaho home, Georgia agreed to let him use the master bedroom and bathroom in the Idaho home. Although all that may be true, it does not establish that Georgia abandoned her Oregon domicile and acquired a domicile in Idaho.

Georgia further testified that Stanley does whatever he wants with the Oregon property, meaning that he treats the Oregon property as his own and Georgia has no personal interest in what he does with that property. Again, the court has no reason to disbelieve the testimony, but

/ / /

it does not establish Georgia's alleged Idaho domicile, especially when measured against all of the factors showing Georgia's lingering and renewed legal ties to Oregon.

Viewing the evidence objectively, the facts are that Georgia and Stanley are legally married, Georgia has vehicles registered in Oregon, is registered to vote in Oregon, renewed her Oregon voter registration twice between 2000 and 2010, and last voted in Oregon in 2008, which is the second of the four years under appeal. Georgia did testify that she had no recollection of actually physically voting in Oregon and guessed that she "probably" voted by mail. However, whether Georgia voted by mail or in person, the fact that she was voting in an Oregon election while claiming to have abandoned her Oregon domicile undercuts Georgia's case for Idaho domicile. Georgia has no vehicles registered in Idaho, her mail goes mostly to Oregon, and her nursing license lists Oregon as Georgia's address.

Georgia also renewed her Oregon driver license after claiming to have moved from Oregon and abandoned her domicile in this state, explaining that she did so for convenience, because she could renew her Oregon driver license by mail and did not want to take the time and effort to study the Idaho driver manual and take the test in that state. Koehnke questioned whether Georgia could, indeed, renew her Oregon driver license through the mail without going into the Oregon Department of Motor Vehicles to have her photograph taken for the new license. That issue was never resolved evidentiarily. Georgia testified that she *desired* to have an Idaho driver license, and intended to take the test. However, the audit for the years at issue began sometime around 2011 and as of the time of trial in the end of calendar year 2013 Georgia still had not obtained an Idaho driver license. That was some 11 years after Georgia bought the home in Idaho.

/ / /

There was also testimony that Georgia returned to the Oregon home on occasion and that she and Stanley each spent some of their time living in the Oregon home and some of their time living in the home in Idaho.

The burden of proof in the Tax Court is a "preponderance" of the evidence, and falls upon the party seeking affirmative relief which, in this case, is Plaintiff. ORS 305.427. The Oregon Supreme Court has stated that:

> " 'Preponderance' derives from the Latin word 'praeponderare,' which translates to 'outweigh, be of greater weight.' 8 Oxford English Dictionary 1289 (1933). With regard to the burden of proof or persuasion in civil actions, it is generally accepted to mean the greater weight of evidence."

*Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987). This court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971) (citation omitted).

The court does not have a problem accepting the fact that a couple can be legally married, but not share their finances or have an intimate relationship, and spend some of their time living under the same roof. However, the totality of the circumstances in this case raises significant questions about whether Georgia has met her burden of proof in persuading the court by a preponderance of the evidence that she did, in fact, abandon Oregon as her state of domicile and acquire a new domicile in Idaho.

### III. CONCLUSION

The court concludes that Plaintiff has not established that she had a fixed habitation or abode in Idaho and an intention to remain there permanently or indefinitely. Plaintiff has not persuaded the court that she abandoned her Oregon domicile. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of Defendant's assessment of income taxes for 2007, 2008, 2009, and 2010 is denied, the court concluding that Plaintiff was domiciled in Oregon and therefore subject to Oregon's income tax.

Dated this ____ day of January 2014.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Dan Robinson on January 30, 2014. The court filed and entered this document on January 30, 2014.*